IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ASHLEY SCOGGIN, | ) | Case No. 4:24-CV-3039 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BOARD OF REGENTS OF THE | ) | |
| UNIVERSITY OF NEBRASKA, and | ) | |
| Individuals AMY WILLIAMS, TREV | ) | |
| ALBERTS, and CHUCK LOVE, JR., In their | ) | |
| individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

---

**BRIEF IN OPPOSITION TO
PLAINTIFF'S RENEWED MOTION TO AMEND PROGRESSION ORDER**

---

Submitted by:

Susan K. Sapp, #19121
Lily Amare, #25735
CLINE WILLIAMS WRIGHT JOHNSON
    & OLDFATHER, L.L.P.
1900 U.S. Bank Building
233 South 13th Street
Lincoln, Nebraska 68508
Telephone: (402) 474-6900
Fax: (402) 474-5393
ssapp@clinewilliams.com
lamare@clinewilliams.com

        AND

Bren H. Chambers, #23150
Vice President and General Counsel
University of Nebraska
3835 Holdrege Street
Lincoln, NE 68583-0745
(402) 472-1201
bchambers@nebraska.edu

Dated the 16th day of December, 2025.

The Board of Regents of the University of Nebraska ("BRUN" or "Board of Regents"), Amy Williams ("Williams"), in her individual capacity, and Trev Alberts ("Alberts"), in his individual capacity (collectively referred to as "Defendants"), respectfully submit this Brief in opposition to Plaintiff's Renewed Motion to Amend Progression Order. Plaintiff, Defendants, and Defendant Chuck Love ("Defendant Love") are referred to collectively as the "Parties."

## I.    **INTRODUCTION**

Plaintiff seeks another amendment to the Court's progression order after missed deadlines or electing not to timely pursue relief from the Court when disputes arose. This case has already been subject to a comprehensive Final Progression Order entered on May 23, 2024, followed by a First Amended Final Progression Order entered on February 21, 2025—both of which were based on the Parties' agreements and, in the latter instance, granted at Plaintiff's request. Despite these extensions and accommodations, Plaintiff has delayed in responding to discovery and allowed discovery disputes to languish for months without action.

The record demonstrates that Defendants have diligently pursued discovery, complied with Court-ordered obligations, produced substantial volumes of documents, and repeatedly attempted to seek Plaintiff's engagement. Plaintiff waited until the eve of critical deadlines to raise issues, failed to file a motion to compel for so long that Defendants came to believe the dispute had either been resolved or dropped, and not heeded the Court's instructions that a hearing was required to pursue such relief. Even after Defendants prepared a detailed worksheet identifying disputed requests and proposed compromises, Plaintiff did not respond or meaningfully advance the purported disputes.

Plaintiff seeks to again modify the progression order but not based on newly discovered facts or unforeseen circumstances. The Court should deny Plaintiff's renewed

motion to amend the progression order and enforce the deadlines previously set to ensure fairness, efficiency, and the orderly resolution of this case.

## II.     FACTUAL BACKGROUND

**A.     PROCEDURAL HISTORY LEADING TO THE ENTRY OF THE COURT'S FINAL PROGRESSION ORDER OF MAY 23, 2024.**

On February 18, 2024, Plaintiff filed this lawsuit against Defendants and Defendant Love. [*See* Doc. No. 1.] The Parties worked collaboratively on the Rule 26(f) report both before and after their Rule 26(f) conference, which occurred on or about May 16, 2024, and finalized the report on or about May 20, 2024. During the May 16 conference, Plaintiff's Counsel[1] objected to the entry of a protective order, even after Defendants' Counsel[2] explained that cases of this nature frequently involved FERPA and HIPAA-related confidentiality issues. [*See* Lily Amare Declaration ("Amare Decl."), ¶ 4.] Plaintiff's Counsel stated she would consider a narrower version of the proposed protective order, and, accordingly, Defendants' Counsel provided Plaintiff's Counsel with a revised, narrow draft. Plaintiff's Counsel did not respond, despite a follow-up. [*Id.* ¶ 5.]

On May 20, 2024, Plaintiff filed the Rule 26(f) report. [*See* Doc. No. 23.] Under that report, Plaintiff's deadline to designate experts was set for February 1, 2025—granting Plaintiff approximately eight months to identify an expert. The Parties also agreed that certain categories of documents would be presumptively privileged and therefore excluded from any privilege log: (1) documents between legal counsel and clients created on or after February 17, 2022; and (2) documents maintained by consulting or testifying experts created on or after February 17, 2022, except to the extent such materials must be disclosed under Rule 26. [*Id.*]

Based on the Parties' Rule 26(f) report, the Court entered the Final Progression Order on May 23, 2024, adopting the deadlines outlined in the Rule 26(f) report. [*See* Doc. No. 24.]

---

[1] For purposes of this Brief, references to "Plaintiff's Counsel" refer to attorney Maren Chaloupka.
[2] For purposes of this Brief, references to "Defendants' Counsel" refer to attorneys Lily Amare and/or Susan Sapp.

**B.    DEFENDANT LOVE'S DISCOVERY REQUESTS SERVED ON PLAINTIFF AND PLAINTIFF'S PROLONGED FAILURE TO RESPOND.**

On July 19, 2024, Defendant Love's counsel, Denise Frost ("Ms. Frost"), served Requests for Production of Documents on Plaintiff. [Amare Decl. ¶ 6.]  Plaintiff did not respond within the time permitted by applicable rules.

After receiving no response, Ms. Frost followed up on September 13, 2024, requesting Plaintiff's overdue responses. Ms. Frost sent multiple additional follow-up communications on September 19, October 8, October 10, and October 17, 2024, again requesting compliance with the outstanding discovery requests. [*Id.* ¶ 7, Exhibit ("Ex.") A, Follow-Up Communications Sent by Denise Frost.] Despite these repeated inquiries, Plaintiff failed to serve any responses.

Ms. Frost again followed up on February 7, 2025, requesting Plaintiff's responses to the outstanding Requests for Production. [*See* Ex. A at p. 1.] Plaintiff ultimately served responses on February 18, 2025, approximately 7 months after the requests were initially served. [*See* Doc. No. 46.]

**C.    DEFENDANTS' DISCOVERY REQUESTS SERVED ON PLAINTIFF AND PLAINTIFF'S FAILURE TO SUPPLEMENT.**

On July 30, 2024, Defendants served Interrogatories and Requests for Production of Documents on Plaintiff (collectively, "Defendants' Discovery Requests"). [Amare Decl. ¶ 8.] Plaintiff's Counsel responded to Defendants' Discovery Requests on September 10, 2024, but did not produce the responsive documents. [*Id.* ¶ 8.] A month later, on October 12, 2024, Plaintiff's Counsel produced approximately 1,000 pages of documents in response to Defendants' Discovery Requests. [*Id.*]

Critically, in her discovery responses, Plaintiff affirmatively acknowledged that she had already taken steps to obtain her medical records. In response to Interrogatory No. 6, Plaintiff identified her medical providers for the preceding eight years. [*Id.* ¶ 9, Ex. B, Excerpts from Plaintiff's Answers to Interrogatories.] In response to Requests for Production

4

Nos. 4 and 6, Plaintiff produced only a limited subset of medical records in her possession and expressly represented that she had requested medical records from her medical providers and would produce them upon receipt. [*Id.* ¶ 9, Ex. C, Excerpts from Plaintiff's Responses to Request for Production of Documents.] [*See also* Ex. Q, Plaintiff's Signed Authorization for Disclosure of Patient Health Information submitted to UNLV Counseling and Psychological Services on or about February 16, 2024.]

Despite these representations, Plaintiff did not supplement her discovery responses with any additional medical records. As a result, on August 14, 2025, Defendants' Counsel sent a letter to Plaintiff's Counsel enclosing notice of Defendants' intent to issue subpoenas to Plaintiff's medical providers and requesting that Plaintiff supplement her responses to Request for Production No. 6 by August 22, 2025. [*Id.* ¶ 10, Ex. D, August 14, 2025, Letter to Plaintiff's Counsel, with Enclosures.][3] That correspondence also included a medical authorization for Plaintiff's execution as medical providers will not release mental health records without signed authorizations, even when served with a subpoena. [*Id.*]

On August 25, 2025, Plaintiff objected to the issuance of the subpoenas. [*See* Doc. No. 25.] On September 3, 2025, Defendants' Counsel sent a follow-up letter requesting that Plaintiff supplement her discovery responses and withdraw her objection to the subpoenas. [Amare Decl. ¶ 11, Ex. E, September 3, 2025, Letter to Plaintiff's Counsel.] The September 3 letter specifically noted that Plaintiff had already acknowledged requesting the same medical records from her providers and had stated that she would produce them, yet she failed to do so. Defendants again requested supplementation of Request for Production No. 6, particularly in light of Plaintiff's then-scheduled deposition on October 2, 2025. [*Id.*]

Defendants' Counsel continued to follow up on September 11, 22, and 29, 2025, regarding Plaintiff's failure to supplement and her objection to the subpoenas. [*Id.* ¶ 12, Ex.

---

[3] On September 19, 2025, Defendants served another Notice of Intent to Issue Subpoena to Husker Sport Psychology and Nebraska Athletic Medicine. These subpoenas were issued without objection. [Amare Decl., ¶ 15.]

F, September 11, 22, and September 29, 2025, Email Correspondences to Plaintiff's Counsel.] Only on September 30, 2025—two days before Plaintiff's deposition—did Plaintiff's Counsel agree that Plaintiff would provide signed medical authorizations on October 2, 2025. [*Id.* ¶ 13.] To date, however, Plaintiff has not produced any of the medical records she previously represented she had requested from her providers. [*Id.* ¶ 14.]

**D.    DEFENDANTS' ADDITIONAL WRITTEN DISCOVERY EFFORTS.**

On February 18, 2025, Defendants caused subpoenas directed to Krissy and Craig Scoggin, Plaintiff's parents, to be delivered to Plaintiff's Counsel via certified mail, return receipt requested. Plaintiff's Counsel acknowledged receipt. [*Id.* ¶ 16.] The subpoenas were served on Plaintiff's Counsel because Plaintiff's initial disclosures identified Plaintiff's Counsel as the appropriate recipient and point of contact for Krissy and Craig Scoggin. [*Id.*]

No responsive document was received for nearly two months. Accordingly, on April 8, 2025, Defendants sent a follow-up letter requesting production of responsive documents by April 18, 2025. [*Id.* ¶ 17, Ex. G, April 8 Letter to Plaintiff's Counsel.] Plaintiff's Counsel requested an extension until May 12, 2025, which Defendants granted. Despite this extension, no documents were produced by the extended deadline. [*Id.* ¶ 18.] Defendants again demanded a response, warning that a motion to compel would be filed if documents were not provided by the next day. [*Id.* ¶ 19.]

Ultimately, responsive documents were produced intermittently between May 15, 2025, and June 9, 2025, reflecting a total delay of nearly four months from the date the subpoenas were served. [*Id.* ¶ 20.] On July 9, 2025, Defendants sent a follow-up letter to Plaintiff's Counsel regarding outstanding items and incomplete production responsive to the subpoena. [*Id.* ¶ 21, Ex. H, July 9, 2025, Letter to Plaintiff's Counsel.] To date, Plaintiff's Counsel has not responded to this correspondence. [Amare. Decl. ¶ 20.]

In addition, set forth below is a chart identifying the subpoenas Defendants have issued in this matter and the dates on which copies were provided to Plaintiff, excluding the previously discussed subpoena to Krissy and Craig Scoggin, which originated from Plaintiff:

| Date Subpoena Sent to Recipient | Subpoena Recipient | Documents Produced in Response to Subpoena (Number of Pages or Files/Documents and Date Provided to Plaintiff) |
|---|---|---|
| August 13, 2024 | University of Nevada, Las Veas (Academic and NIL) | November 27, 2024: 277 pages of documents produced. |
| December 10, 2024 | BDP Communications, LLC | February 6, 2025: 4 documents/files were produced. In addition, Defendants provided 4 additional files located through publicly available internet sources based on information received from BDP. |
| September 27, 2025 | Nebraska Athletics Medicine | September 30, 2025: 39 pages of documents produced (this was part of Defendants' supplemental production on September 30). |
| September 27, 2025 | Husker Sports Psychology | November 25, 2025: 25 pages of documents produced. |
| October 3, 2025 | Project Wellbeing | November 25, 2025: 6 pages of documents produced. |
| October 3, 2025 | University of Utah, Dr. Travis Maack | November 25, 2025: 547 pages of documents produced. |
| November 6, 2025 | University of Nebraska Lincoln Student Health Center | No responsive documents to produce. |
| October 3, 2025 | Salt Lake City Community College | SLCC is still finalizing response. |
| October 3, 2025 and October 28, 2025 | University of Nevada, Las Vegas (Medical Records) | November 25, 2025: 139 pages of documents produced. |

[*Id.* ¶ 22.]

E.     **PLAINTIFF'S DISCOVERY REQUESTS SERVED ON DEFENDANTS.**

On July 2, 2024, Plaintiff served Interrogatories, Requests for Production, and Requests for Admissions on each of the Defendants. [Amare Decl. ¶ 22.] After reviewing the discovery requests, Defendants determined that *certain* requests, though otherwise unobjectionable, sought information protected under FERPA. [Id.] Rather than objecting to those requests, to ensure Plaintiff had access to otherwise relevant documents and information, Defendants filed a Motion for an Order Authorizing the Release of FERPA-Protected Information, especially given the lack of response and resolution regarding the protection order. [*See* Doc. No. 32.] The Court granted the Motion and entered an Order directing Defendants to provide notice to individuals whose FERPA-protected information would be disclosed in discovery and to produce certain responsive documents after complying with the notice requirements. [*See* Doc. No. 34.]

On July 30, 2024, Defendants' Counsel emailed Plaintiff's Counsel requesting an additional 30 days to respond to the discovery requests. [Amare Decl. ¶ 23.] Plaintiff's Counsel agreed. [*Id.*] In that email, Defendants' Counsel explained that additional time was needed both to prepare responses and to comply with the Court's July 26 Order. On August 26, 2024, Defendants' Counsel requested an additional brief extension of the response deadline—from August 30 to September 10, 2024. [*Id.*]

On September 10, 2024, Defendants served their respective answers and responses, including objections, to Plaintiff's Interrogatories, Requests for Production, and Requests for Admissions. [*Id.* ¶ 24.] At that time, Defendants produced approximately 1,073 documents, totaling 2,790 pages. [*Id.*]

**F.** **DISCOVERY DISPUTE REGARDING BRUN'S RESPONSES, THE PROGRESSION ORDERS AND PLAINTIFF'S FAILURE TO PROSECUTE AND PROGRESS DISCOVERY.**

**1.** **Plaintiff's January 2025 eleventh hour request to amend progression order and pursue the alleged dispute.**

On January 28, 2025—nearly four and half months after Defendants served their discovery responses—Plaintiff's Counsel contacted Defendants' Counsel regarding purported discovery disputes involving BRUN's responses to discovery requests. [Amare Decl. ¶ 25; Ex. I, January 28, 2025 and February 7, 2025 Email Exchange.] [*See also* Amare Decl. ¶ 36; Ex. N, BRUN's Answers to Interrogatories; Ex. O, BRUN's Responses to Request for Production of Documents.]

The January 28 email attached Plaintiff's "Resolution Attempt" [*See* Doc. No. 79-1], stated Plaintiff's intent to seek an extension of case deadlines, and requested Defendants' position with respect to the discovery dispute. This outreach occurred only days before Plaintiff's expert designation and report deadline of February 1, 2025.

With respect to the request for extension, on February 7, 2025, Defendants' Counsel expressed concern as follows:

> We are generally speaking not opposed to an extension of the case progression dates, but I do think it is important for your client to respond to Coach Love's discovery requests to your client as soon as possible [as discussed in Section II.B above]. From what I can see, those are far overdue, and its hard to be too excited about pushing dates out when some preliminary work remains incomplete. When would you be able to commit to having those responses to Denise?"

[*See* Ex. I.] With respect to the discovery dispute, Defendants' Counsel advised as follows: "Thank you for your detailed replies to our objections and your attempt at resolution. Unfortunately, I do not think we are seeing any overlap in our positions that would facilitate resolution. It may be something you need to take up with the court, as we are inclined to stand on our objections." [*Id.*] Thereafter, Plaintiff did not schedule a meet and confer or seek judicial intervention for approximately five months, as discussed below.

9

Ultimately, Defendants elected not to oppose Plaintiff's request for an extension. Plaintiff subsequently filed an Unopposed Motion to Amend Case Progression, which the Court granted, issuing the First Amended Final Progression Order on February 21, 2025 ("February 21 Progression Order"). [*See* Doc. Nos. 47 and 48.]

The February 21 Progression Order extended the deadline to complete written discovery to November 2, 2025, and set November 16, 2025, as the deadline to file motions to compel written discovery. It also reset expert disclosure deadlines, requiring Plaintiff to complete expert disclosures and reports by July 2, 2025, and Defendants by October 1, 2025, for all experts expected to testify at trial, including both retained experts under FED. R. CIV. P. 26(a)(2)(B) and non-retained experts under FED. R. CIV. P. 26(a)(2)(C). Specifically, the February 21 Progression Order stated:

> While treating medical and mental health care providers are generally not considered "specially retained experts," not all their opinions relate to the care and treatment of a patient. Their opinion testimony is limited to what is stated within their treatment documentation. As to each such expert, any opinions which are not stated within that expert's treatment records and reports must be separately and timely disclosed.

[*See* Doc. No. 48, p. 2.]

**2.    Plaintiff's July 2025 revival of the dispute after deadlines had passed.**

From January 28, 2025, until June 26, 2025, Defendants did ***not*** receive communication from Plaintiff's Counsel regarding the purported discovery disputes. [Amare Decl. ¶ 26.] Defendants' presumption with respect to the discovery disputes was that Plaintiff was no longer pursuing them.

On June 26, 2025, just four days before Plaintiff's expert-designation deadline, Plaintiff's Counsel stated that she would "revisit" the objections and would "try to get a motion to compel on file by Monday." [*Id.* ¶ 27, Ex. J, June 26, 2025 Email from Plaintiff's Counsel.]

On July 2, 2025, Plaintiff's Counsel contacted the Court to advise that she intended to file a Motion to Compel. [*Id.* ¶ 28, Ex. K, Correspondence with the Court in July 2025.]

The following day—on July 3, 2025, after the expert-designation deadline had already passed—Plaintiff filed a Motion to Amend the Progression Order seeking a 180-day extension of all deadlines contained in the First Amended Final Progression Order. [*See* Doc. No. 55.] In that motion, Plaintiff represented to the Court that a discovery dispute remained unresolved and that the Parties had been "unable to resolve [it] without the involvement of the Court."

On July 3, 2025, the Court directed the Parties to submit position statements by July 9, 2025, and thereafter, to meet and confer regarding the discovery disputes. [Ex. K at p. 4.] The Parties submitted their position statements on July 9, 2025. [Amare Decl. ¶ 29, Ex. R, Defendant BRUN's Position Statement.]

On July 22, 2025, the Court followed up regarding the status of the Parties' meet and confer. Defendants responded that, as of that date, they had not received any communication from Plaintiff's Counsel concerning scheduling a meet and confer. [Ex. K at p. 2.] Defendants' Counsel also advised the Court that they were preparing a chart summarizing each Party's position and their most recent compromise. [*Id.* at p. 1.] The Court denied the Motion to Extend Progression Order without prejudice. [Doc. No. 57.]

Immediately after the July 22, 2025 communication from the Court, Defendants' Counsel emailed Plaintiff's Counsel to request availability for the meet and confer. [Amare Decl. ¶ 30.]  The meet and confer ultimately occurred on August 15, 2025, lasted approximately two and a half hours, and resulted in an agreement on a limited number of discovery requests, including Defendants' commitment to supplement certain discovery responses consistent with the Parties' compromise. [Susan Sapp Declaration "Sapp Decl". ¶¶ 3 - 5.]

The Parties also conferred about the Defendants' Objections to Plaintiff's Notice of Intent to Issue a Subpoena to the University of South Dakota ("USD"), which had been served on Plaintiff on June 17, 2024. [Ex. V.] Defendants' learned of Plaintiff's dispute with this

11

objection on July 28, 2025 (more than a year after the Objections were initially served). [Amare Decl. ¶ 42.] The Parties were unable to reach agreement with respect to this.

Further, at the meet and confer, Defendants' Counsel also clarified that no protective order exists in this case (contrary to what was stated in the Resolution Effort, Doc. No. 79-1); rather, Defendants had previously filed a motion seeking authorization to disclose FERPA-protected education records, not a motion for protective order. [Sapp Decl. ¶ 6.] Plaintiff's Counsel had represented that she would prepare and return a revised protective order—and Defendant supplied their draft (which was provided to Plaintiff's Counsel in mid-2024) to facilitate that process—but Plaintiff did not do so. [*Id.*] To date, Plaintiff's Counsel has taken no action, and the issue remains unresolved.  [*Id.* at 7.]

Before and after the meet and confer, Defendants' counsel undertook substantial effort to advance resolution of the remaining disputes. [Sapp Decl. ¶ 8; Amare Decl. ¶ 31.] On September 11, 2025, Defendants' counsel circulated a detailed 54-page worksheet (also referred to as a "chart"). [Sapp Decl. ¶ 8; Ex. L, Email to Plaintiff's Counsel attaching Discovery Dispute Worksheet.] The timing of the September 11 circulation reflects Defense Counsel's request-by-request analysis of the disputed discovery, efforts to develop workable compromise positions, and the need to obtain client review and approval before dissemination. [Sapp Decl. ¶ 9; Amare Decl. ¶ 32.]

The worksheet identified each disputed discovery request, Plaintiff's original request, the responding party's initial position, the moving party's most recent proposed compromise, the responding party's compromise discussed at the meet and confer, and the final compromise positions as of September 11, 2025. [Ex. L.] The worksheet reflects multiple final compromise positions offered by Defendants both during and after the meet and confer with respect to the disputed discovery requests. [*Id.*]

On October 2, 2025, immediately following Plaintiff's deposition, counsel for the Parties participated in an impromptu meeting. [Jaclyn Klintoe Declaration ("Klintoe Decl.")

¶ 3.] During that meeting, Plaintiff's counsel represented that she would review the remaining discovery issues, respond to Defendants' proposed compromises, and file a motion to compel by an "aspirational" date of October 20, 2025, as to any discovery requests on which the Parties were unable to reach agreement. [*Id.* ¶ 4.] Plaintiff's counsel also referenced a potential expert by name but stated that it was not yet clear whether that individual could be designated because the expert might be unavailable to serve. [*Id.* ¶ 5.]

During this discussion, Defendants' Counsel and Ms. Klintoe did not state whether Defendants would oppose or not oppose any such expert designation. [*Id.* ¶ 6.] Defendants' Counsel simply acknowledged the information and noted it, as Defendants' Counsel had not yet had an opportunity to consult each other or their clients regarding the verbal proposed designation and would have had to obtain client input before taking a position in any event. [*Id.*]

On October 15, 2025, Plaintiff's Counsel advised that she would not meet the October 20 aspirational deadline and would instead file the motion by October 30, 2025. [Amare Decl. ¶ 33, Ex. M, October 15, 2025, Email Communication from Plaintiff's Counsel.] The deadline to file any motion to compel was November 11, 2025.

Plaintiff's Counsel neither attempted to schedule a hearing with the Court nor filed a motion to compel by October 20, October 30, or November 11, 2025. [*Id.* ¶ 34.] Even, as of the date of this filing, Plaintiff has not responded to Defendants' September 11, 2025, worksheet or to the compromise positions set forth therein. [*Id.* ¶ 35; Sapp Decl. ¶ 11.]

**D.    SUPPLEMENTATION OF DOCUMENTS.**

Defendants provided agreed-upon supplemental discovery responses on September 18, 2025, and again on September 30, 2025, consistent with the Parties' August 15, 2025, meet-and-confer agreement (to the extent agreement was reached at the meeting), along with additional supplementation where appropriate. [Amare Decl. ¶ 37, Ex. P, BRUN's Supplemental Responses to Request for Production of Documents (September 18, 2025); Ex.

S, BRUN's Second Supplemental Responses to Requests for Production of Documents (September 30, 2025); Ex. T, BRUN's Supplemental Answers to Plaintiff's Interrogatories (September 30, 2025); Ex. U, BRUN's Third Supplemental Responses to Plaintiff's Requests for Production (November 25, 2025).]

Consistent with the August 15 meet and confer, Defendants supplemented Request for Production No. 2 with Title IX training materials. As originally served, Plaintiff sought, for a five-year period, all materials used to train any Title IX Coordinator (including deputies and interim coordinators) across the entire University of Nebraska system. [*See* Ex. P and S.] Defendants objected on multiple grounds, including relevance, overbreadth, proportionality, and undue burden, explaining that the request improperly swept in training materials from institutions and individuals with no connection to Plaintiff or the claims at issue. [*Id.*] Defendants further objected that, even if limited to the University of Nebraska-Lincoln, the request sought training materials unrelated to the only two Title IX officials involved in Plaintiff's matter—Meagan Counley and Leslie Shaver—and extended beyond Plaintiff's period of enrollment. Notwithstanding those objections, Defendants' original response proposed a compromise—without waiving objections—limiting production to Title IX training materials used to train Meagan Counley and Leslie Shaver during the relevant period. That same compromise was reiterated and ultimately accepted at the August 15 meet and confer. Defendants' subsequent production was made pursuant to that negotiated compromise. [*Id.*]

Consistent with the agreed-upon limitation, Defendants produced the Title IX training materials available for download from the University of Nebraska-Lincoln's public Title IX training page, identified materials for which no active links existed or that were otherwise unavailable for download, and committed to supplement to the extent additional materials became available. [*Id.*] These materials constituted the majority of the documents produced on September 18 and September 30, 2025. [Amare Decl. ¶ 38.] At the August 15

meet and confer, BRUN also agreed to provide a privilege log to the extent any responsive documents to the narrowed request of Request No 2 were withheld on the basis of privilege. [Ex. L at p. 4.] BRUN's supplemental responses did not identify any documents withheld on privilege grounds with respect to the agreed-upon training materials for Meagan Counley and Leslie Shaver. [*See* Ex. P and S.]

It is also correct that, in response to other requests, BRUN produced Trev Alberts' Employment Agreement and re-produced Board of Regents policies and Student-Athlete policies that had already been produced on September 10, 2024, and additional ones. [Amare Decl. ¶ 40.] These productions were discrete, limited, or largely duplicative of materials previously produced. [*Id.*] They were non-substantive in scope and would not have impeded Plaintiff's ability to timely designate experts, pursue a motion to compel, or otherwise comply with the deadlines set forth in the applicable progression orders. BRUN also produced two executive memoranda identified in September 2025, consistent with the ordinary course of discovery as document collections continue to be reviewed, and similar in substance to other Title IX-related materials already produced. [*Id.* at 41.]

With respect to Plaintiff's Name Image Likeness ("NIL") related discovery requests (Interrogatory Nos. 9 and 10, and Request for Production 9), Defendants objected to the extent Plaintiff sought disclosure of individual student-athlete NIL information, including NIL agreements, compensation amounts, or identification of student-athletes receiving NIL benefits. [*See* Ex. N at p. 8-9; Ex. O; Ex. L at 9 - 11.] Defendants explained that such information is protected by FERPA and subject to an express statutory prohibition under Neb. Rev. Stat. § 48-3604, which restricts institutional disclosure of NIL contract information absent a court order. [*See* Ex. N at pp. 8-9.] Defendants further objected on relevance and proportionality grounds and advised that neither anonymization nor a protective order would cure the statutory prohibition. Nevertheless, Defendants offered a reasonable, narrowly tailored compromise—reflected in the meet-and-confer process and the

15

September 11, 2025 worksheet—agreeing to produce general NIL policies, procedures, practices, protocols, and guidelines, as well as systems-level information describing whether and how NIL compensation is tracked, including with respect to Women's Basketball, while excluding individual NIL agreements, compensation amounts, or student-athlete-identifying information. [*See* Ex. L at 9 - 11.] Plaintiff did not engage with these compromise positions and did not respond to the September 11, 2025, worksheet or narrow the NIL requests accordingly. Defendants did produce the general NIL policies as their compromise promised in the worksheet.

With respect to Plaintiff's assertion that BRUN failed to provide a privilege log, BRUN was not required to provide a privilege log for several independent reasons. *First*, where Plaintiff expressly requested only "non-privileged documents," BRUN was not required to log documents withheld on the basis of privilege because privileged documents are, by definition, non-responsive to such requests. [*See, e.g.*, Ex. O, Request No. 10; Ex. L at pp. 27 - 29.] A privilege log is not required for documents that are outside the scope of the request itself.

*Second,* the Parties expressly agreed in their Rule 26(f) Report that neither party would be required to provide a privilege log for privileged documents created after February 17, 2022. [*See* Doc. No. 24.] Plaintiff cannot now seek to impose an obligation that the Parties jointly agreed would not apply.

*Third*, BRUN is not obligated to provide a privilege log where documents are withheld based on valid objections that render the documents non-discoverable. FED. R. CIV. P. 26(b)(5) requires a privilege log only for documents that are "otherwise discoverable." The Advisory Committee Notes to Rule 26(b)(5) make clear that the obligation to describe withheld materials applies only when the documents fall within the proper scope of discovery. Where a request is overbroad, unduly burdensome, or seeks irrelevant material, the responding party may object to the request as framed and is not required to log

documents that are never deemed discoverable in the first instance. The Advisory Committee explains:

> The obligation to provide pertinent information concerning withheld privileged materials applies only to items 'otherwise discoverable.' If a broad discovery request is made… and the responding party believes in good faith that production of documents for more than a limited period would be unduly burdensome, it should make its objection to the breadth of the request and… produce the unprivileged documents and describe those withheld under the claim of privilege.

FED. R. CIV. P. 26(b)(5) advisory committee's note.

This principle is illustrated by Request for Production No. 5, which sought ten years of communications between *any* employee or agent of the University of Nebraska and *any* employee or agent of the Board of Regents relating to RP-3.3.15. BRUN objected on multiple grounds, including relevance, overbreadth, proportionality, lack of reasonable temporal limitation, vagueness, and burden—explaining that the request potentially swept in communications involving tens of thousands of employees across four separate universities and sought information unrelated to Plaintiff's claims. [*See* Ex. O.] BRUN further objected to the extent the request sought attorney-client privileged and work-product materials, FERPA-protected records, and confidential personnel information. [*Id.*]

Because BRUN objected to Request No. 5 as facially improper and outside the scope of discoverable information under Rule 26(b), BRUN was not required to provide a privilege log for documents encompassed by that request. These objections and the legal basis for them were fully explained to Plaintiff in BRUN's responses and were again set forth in detail in the September 11, 2025 worksheet circulated to Plaintiff's counsel.

In short, BRUN complied with its obligations under Rule 26(b)(5). Plaintiff's attempt to characterize BRUN's objections as a failure to provide a privilege log misapplies the governing law, does not reflect Parties' agreements and ignores the overbroad and non-discoverable nature of the requests at issue.

### III.     ARGUMENT

**A.     PLAINTIFF HAS NOT DEMONSTRATED GOOD CAUSE TO AMEND THE PROGRESSION ORDER UNDER RULE 16(b) AND THE REQUESTED RELEASE SHOULD BE DENIED.**

A scheduling order "may be modified ***only*** for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4) (emphasis added). The primary measure of good cause is the moving party's diligence. *Midwest Med. Sols., LLC v. Exactech U.S., Inc.*, 95 F.4th 604, 607 (8th Cir. 2024), *reh'g denied,* No. 22-2250, 2024 WL 1561617 (8th Cir. Apr. 11, 2024) (quoting *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)). To satisfy Rule 16(b), the movant must establish that the scheduling deadlines "cannot be met despite [its] diligent efforts." *Duffy v. Father Flanagan's Boys Home*, No. 8:03CV31, 2005 WL 3479647, at *1 (D. Neb. Dec. 20, 2005).

"Generally, the Court will not reach the issue of 'prejudice to the nonmovant resulting from modification of the scheduling order' if it determines that the movant was not 'diligent in meeting the scheduling order's deadlines.'" *Bamburg v. Union Pac. R.R. Co.*, No. 8:23CV231, 2024 WL 3276191, at *2 (D. Neb. July 2, 2024) (citing *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 717 (8th Cir. 2008). "[I]n a Rule 16(b) good cause analysis, a lack of prejudice to [the nonmovant] does not undo the consequences of [the movant's] lack of diligence." Bamburg, 2024 WL 3276191, at *2 (quoting *Rosillo v. Holten*, No. 13-CV-1940, 2014 WL 7357308, at *5 n.2 (D. Minn. Dec. 23, 2014).

Plaintiff's reliance on *Bamburg,* is misplaced. *Bamburg* involved a narrow, targeted extension driven by a genuinely unforeseen change in circumstances—the late disclosure of previously unknown medical records by a non-retained expert on the eve of her deposition, despite the defendant's prior diligence in requesting records, obtaining authorizations, and issuing subpoenas. 2024 WL 3276191 at *1–3. The court expressly found that this unexpected development justified limited relief under Rule 16(b). That situation bears no resemblance to this case, where Plaintiff seeks to amend deadlines involving treating providers and information Plaintiff has known about and controlled from the outset. And,

*Bamburg* reinforces the Rule 16(b) standard governing this case. The *Bamburg* court applied *Bradford*, 249 F.3d at 809, and found that the movant acted diligently before addressing prejudice. 2024 WL 3276191, at *2–3. Here, by contrast, the record reflects months of inactivity, missed expert and motion-to-compel deadlines, and repeated failures to timely seek court intervention. Under *Bradford*, where diligence is lacking, the Court "ha[s] no need to explore beyond the first criterion." 249 F.3d at 809–10.

Finally, the scope of relief in *Bamburg* underscores why it does not support Plaintiff's request. The extension there adjusted a *Daubert* deadline by 28 days, did not reopen expert disclosures or discovery, and preserved a trial date still months away. 2024 WL 3276191, at *3. Plaintiff here seeks far broader relief that would disrupt the Court's progression orders and undo deadlines already extended once at Plaintiff's request. Rule 16(b) does not permit such relief, and *Bamburg* provides no basis to rule otherwise.

Plaintiff's reliance on out of circuit authorities, *Lehman Bros. Holdings, Inc. v. Universal American Mortgage Co.*, 300 F.R.D. 678 (D. Colo. 2014), and *Atotech USA Inc. v. MacDermid, Inc.*, 2006 WL 8457603 (D.N.J. Nov. 8, 2006), yields no better result. Both decisions reaffirm, rather than relax, the Rule 16(b) good-cause framework and turn on case-specific circumstances not present here, such as newly asserted claims or newly discovered evidence that arose during discovery and could not reasonably have been anticipated when the scheduling order was entered. In *Lehman*, the court acknowledged a lack of diligence but nonetheless granted limited relief after weighing foreseeability and prejudice in light of newly asserted allegations. 300 F.R.D. at 682–84. Whatever the merits of that balancing approach employed by the court in *Lehman*, it is not the governing method in this Circuit; the Eighth Circuit treats diligence as the "primary measure" of good cause and permits courts to deny relief without reaching prejudice or other factors when diligence is lacking. *Bradford*, 249 F.3d at 809–10; *Sherman*, 532 F.3d at 717.

19

*Atotech* likewise involved the discovery of new evidence supporting a new claim and carefully limited relief that preserved the existing trial schedule and imposed narrowly tailored discovery obligations. 2006 WL 8457603, at *2–4.

Those circumstances stand in stark contrast to this case. Plaintiff does not identify any newly discovered evidence, intervening change in circumstances, or late-emerging claims that could justify revisiting expired deadlines. Instead, Plaintiff seeks relief to cure her failure to gather information within her  possession and her failure to meet Court deadlines. Rule 16(b) does not permit amendment of progression orders under those circumstances, and none of the cases relied upon by the Plaintiff provide a basis to undo deadlines already missed.

In fact, *Petrone v. Werner Enters., Inc.* forecloses the core premise of Plaintiff's motion: using late supplementation or "efficiency" to justify rewriting expired expert deadlines. 940 F.3d 425, 433–34 (8th Cir. 2019). There, the Eighth Circuit held it was error to extend expert deadlines after finding no good cause, emphasizing the good-cause standard "is not optional" and that diligence is the threshold inquiry. *Id.* at 433 (quoting *Sherman*, 532 F.3d at 716). Where revised opinions merely corrected flaws that could have been addressed earlier— rather than reflecting newly discovered or previously unavailable information—good cause was absent. *Id.* at 433–34. The court also rejected attempts to use Rules 1, 26(e), or 37 to override Rule 16(b), warning that doing so would "render scheduling orders meaningless." *Id.* at 434. The same logic applies here: Rule 26(e) permits supplementation; it does not excuse a lack of diligence or authorize reviving expired deadlines to fix avoidable delays.

The appropriate course was for Plaintiff to make timely expert disclosures and serve any required reports based on the records already produced—more than 3,000 pages of documents exchanged in discovery. Rule 16(b) required Plaintiff to meet the expert deadlines using the information then available; it does not permit Plaintiff to withhold disclosures,

20

miss the Court's deadlines, and later seek to rewrite the progression order simply because Plaintiff chose not to pursue disputed discovery matters.

If additional records were later produced—whether through supplementation, third-party production, or resolution of objections—the proper mechanism is supplementation under Rule 26(e), not a retroactive extension of expert deadlines. Rule 26(e) exists to address genuinely new or materially different information that emerges after a timely disclosure, allowing a party to supplement "by the time the party's pretrial disclosures under Rule 26(a)(3) are due." FED. R. CIV. P. 26(e)(2). In other words, Plaintiff was required to disclose on time based on the substantial record already available, and then—only if new, previously unavailable information later emerged—supplement as appropriate under Rule 26(e).

This case has already proceeded under two progression orders—the Final Progression Order entered on May 23, 2024, and the First Amended Final Progression Order entered on February 21, 2025, which the Court granted at Plaintiff's request. The amended order substantially extended discovery and expert deadlines, including Plaintiff's expert disclosure deadline.

The procedural history underscores why Plaintiff cannot meet Rule 16(b). Plaintiff had months—and then months more after the February 21, 2025, amended order—to identify experts, secure records, and litigate disputes within the Court's schedule. Instead, Plaintiff delayed discovery responses for months; promised supplementation (including medical records) but did not provide it; resisted subpoenas despite prior representations she had requested the same records; and allowed alleged disputes to remain dormant for long stretches. Plaintiff also missed the motion-to-compel deadline after representing she would file by October 20, then October 30, and then allowing the November 11, 2025, deadline to pass without filing—despite the Court's repeated instruction that a hearing was required. Meanwhile, Defendants expended substantial effort to move disputes toward resolution, including preparing and circulating a detailed 54-page worksheet charting each disputed

request, the parties' positions, and compromise offers—yet Plaintiff did not respond to the worksheet.

That history matters because it makes Plaintiff's request inherently backwards: Plaintiff is not seeking modification because deadlines "cannot be met despite" diligent efforts; Plaintiff seeks modification because she did not use the time and extensions already granted and did not timely seek court relief when she claimed it was needed. Rule 16(b) does not permit parties to revive lapsed deadlines under those circumstances.

In addition, at the November 18, 2025, status conference, when the Court asked whom Plaintiff intended to designate as an expert, Plaintiff identified the possibility of disclosing treating physicians or medical providers. That response underscores the absence of good cause. Treating providers are not newly discovered witnesses, and the prospect of designating them at this late stage reflects unnecessary delay. Plaintiff has known the identity of her treating physicians since the outset of this case. In her written discovery responses, Plaintiff affirmatively identified those providers and represented that she had already requested their records and would produce them upon receipt. The identity of Plaintiff's treating physicians and the substance of their treatment has always been uniquely within Plaintiff's possession and control and was known well before the expert-disclosure deadline expired.

Plaintiff cannot credibly contend that the need to amend her expert disclosures arises from newly discovered evidence or unforeseen circumstances. Rather, Plaintiff's failure to timely disclose treating physicians as experts—or to disclose the scope of any opinions they may offer—is the result of Plaintiff's decision-making and perhaps strategy, not an inability to comply despite diligent efforts. These facts defeat any showing of good cause under Rule 16(b).

**B.     PLAINTIFF'S REQUESTED AMENDMENT WOULD PREJUDICE DEFENDANTS.**

If the Court were to reach the second element of the good cause analysis, prejudice to Defendants, Plaintiff's proposed amendment would materially prejudice Defendants and undermine the purpose of case-management orders, "the essential mechanism for cases becoming trial ready in an efficient, just and certain manner." *Rouse v. Farmers State Bank,* *866 F. Supp. 1191, 1198 (N.D. Iowa 1994).* Late expert designations would force Defendants to absorb the consequences of Plaintiff's delay: evaluating newly disclosed opinions, determining whether rebuttal experts are necessary, revising deposition strategy, and preparing *Daubert* and trial strategy without the orderly sequencing the progression order is designed to provide. Allowing late expert disclosures at this stage would also likely reopen or extend discovery (expert depositions, other written discovery, rebuttal designations, and renewed motion practice), further delaying resolution of this action and increasing costs. These prejudices are concrete and directly caused by Plaintiff's lack of diligence.

Plaintiff's NIL-based rationale does not supply good cause and does not eliminate prejudice. The NIL dispute involved legally protected student-athlete information and Defendants offered tailored compromises (general policies and systems-level tracking information) while objecting to student-identifying agreements and compensation; Plaintiff did not pursue that dispute through the motion-to-compel deadline. Nor does Plaintiff need a progression-order amendment to obtain information uniquely within Plaintiff's possession (e.g., Plaintiff's own NIL arrangements).

**C.     PLAINTIFF'S REQUEST TO EXTEND THE DEPOSITION DEADLINE AND FUTURE DEADLINES IS PREMATURE.**

Plaintiff also seeks to extend the deposition deadline and other future deadlines, but that request is premature. The current deposition deadline remains approximately two and a half months away, and the Parties are actively cooperating and conducting extensive depositions within the existing schedule. At this stage, Plaintiff cannot demonstrate that the deposition deadline or other deadlines cannot be met despite diligent efforts.

If, after exercising due diligence, the Parties are unable to complete all depositions prior to the deadline, the Parties will meet and confer in good faith and, if necessary, present an appropriate motion to the Court at that time. Plaintiff's speculative request for an extension now does not constitute good cause under Rule 16(b).

**D.    PLAINTIFF CANNOT DEMONSTRATE EXCUSABLE NEGLECT FOR MISSED DEADLINES.**

Because Plaintiff seeks to amend the progression order after multiple deadlines have passed, she must also demonstrate excusable neglect. *Rodrigtuez v. Union Pac. R.R.*, No. 8:04CV576, 2006 WL 898152, at *6 (D. Neb. Apr. 6, 2006). The excusable-neglect inquiry considers prejudice, the length and impact of the delay, the reason for the delay and whether it was within the movant's control, and whether the movant acted in good faith. *Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 395 (1993).

Each factor weighs against Plaintiff. The delays were substantial, the reasons for delay were entirely within Plaintiff's control, and Defendants have been prejudiced in their ability to prepare their case and evaluate expert testimony within the Court-ordered schedule. Even assuming good faith, good faith alone does not excuse prolonged inaction and missed deadlines.

Granting Plaintiff's renewed motion would reward delay, prejudice Defendants, and undermine the integrity of the Court's scheduling orders. Plaintiff has already received substantial extensions and now seeks additional time to address matters involving information long within her possession and control. Rule 16(b) does not permit such relief. The Court should deny Plaintiff's renewed motion to amend the progression order.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Renewed Motion to Amend Progression Order.

Dated this 16th day of December, 2025.

<div style="margin-left:40%">

BOARD OF REGENTS OF THE
UNIVERSITY OF NEBRASKA, and
Individuals AMY WILLIAMS, TREV
ALBERTS, Defendants

</div>

By:     /s/ Lily Amare_____
        Susan K. Sapp, #19121
        Lily Amare, #25735
        Cline Williams Wright
          Johnson & Oldfather, L.L.P.
        1900 U.S. Bank Building
        233 South13th Street
        Lincoln, NE 68508
        (402) 474-6900
        ssapp@clinewilliams.com
        lamare@clinewilliams.com

                AND

        Bren H. Chambers, #23150
        Vice President and General Counsel
        University of Nebraska
        3835 Holdrege Street
        Lincoln, NE 68583-0745
        (402) 472-1201
        bchambers@nebraska.edu

### CERTFICATE OF COMPLIANCE

I, Lily Amare, hereby certify that this Brief complies with the limits set forth in NECivR 7.1(d). Further, based on the Word Count function of Microsoft Word 2013-word processing software, applied to include all text, including the caption, headings, footnotes, and quotations, I certify this Brief contains 7,237 words.

I further certify that no generative artificial intelligence program was used in drafting this document.

        /s/ Lily Amare_____
        Lily Amare

### CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties.

        /s/ Lily Amare_____
        Lily Amare