IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ASHLEY SCOGGIN,<br><br>                Plaintiff,<br><br>vs.<br><br>BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA, and individuals AMY WILLIAMS, TREV ALBERTS, and CHUCK LOVE, JR., in their individual capacities,<br><br>                Defendants. | Case No. 4:24-cv-3039<br><br>**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND FINDING OF GOOD CAUSE** |

**Standard of Review**

Federal Rule of Civil Procedure 15(a)(2) provides:

*Other Amendments.* In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Reasons for denying leave include undue delay in filing the motion, bad faith or dilatory motive, repeated failure to cure deficiencies[1], undue prejudice to the opposing party, and futility of amendment.[2] Ordinarily, the decision of whether to allow a plaintiff leave to amend her complaint is within the district court's discretion; but when a district court denies leave on the basis of futility, appellate review of this legal conclusion is *de novo*.[3]

---

[1] This is Plaintiff's first requested amendment to the Complaint.
[2] *Foman v. Davis*, 371 U.S. 178, 182 (1962).
[3] *Clobes v. 3M Co.*, 106 F.4th 803, 809 (8th Cir. 2024).

The burden of proof to support a finding of undue prejudice is on the party opposing the amendment.[4] Similarly, given the liberal policy favoring amendment of pleadings so as to decide cases on their merits, the burden of demonstrating bad faith falls upon the party opposing amendment.[5] A district court "therefore indulges all reasonable inferences in favor of allowing the amendment and imputes benign motives to the moving party whenever it is plausible to do so."[6]

Outside of the deadlines in the scheduling order (which is the case here), a motion for leave to amend requires a showing of good cause.[7] This includes a showing of diligence in trying to obtain discovery.[8] Rule 16 contemplates flexibility such that the "judge should actively consider making adjustments and moving in new directions in response to new informational and situational developments...."[9]

A. <u>Plaintiff has not committed undue delay in filing this Motion.</u>

Good cause to amend a complaint out of time may be shown by pointing to a change in the law, newly discovered facts, or another significant changed circumstance that requires amendment of a party's pleading.[10] This Motion arises from newly discovered facts – facts which, through BRUN's failure to produce requested policies, Plaintiff came to believe that no such policies exist. Although this Motion is out of time, so was the belated production of the policy that supports the

---

[4] *Roberson v. Hayti Police Dept.*, 241 F.3d 992, 995 (8th Cir. 2001).
[5] *EcoNugenics, Inc. v. Bioenergy Life Science, Inc.*, 355 F. Supp.3d 785, 791 (D. Minn. 2019).
[6] *Id.*
[7] *Williams v. TESCO Servs., Inc.*, 719 F.3d 968 (8th Cir. 2013) (finding plaintiff had failed to show good cause for amendment sought weeks before a long-scheduled trial date).
[8] *Target Corp. v. LCH Pavement Consultants, LLC*, 960 F. Supp. 2d 999, 1007 (D. Minn. 2013) ("In its motion before the Court, Target does not address its diligence in trying to get any necessary and relevant discovery before the motion to amend deadline, nor does it address why it had not or could not have gotten the necessary discovery for the pleading prior to the filing of the Second Amended Complaint.").
[9] <u>Moore's Federal Practice</u>, § 16.03[2], at 16-24.
[10] *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012).

Fifth Cause of Action, seventeen months after Plaintiff requested policies covering the women's basketball team.

On December 19, 2025, BRUN produced the University of Nebraska Student-Athlete Conduct Policy (hereinafter the "Conduct Policy"). Although the Conduct Policy was responsive to Plaintiff's Request for Production No. 17, served on July 2, 2024, none of BRUN's responses and supplemental responses before its December 19, 2025 email included the Conduct Policy. Before December 19, 2025, the undersigned had deposed two University of Nebraska witnesses, its Title IX Investigator and Defendant ALBERTS, and discussed University of Nebraska policies with both witnesses; neither witness disclosed the existence of the Conduct Policy.

Plaintiff is filing this Motion approximately two weeks after BRUN produced the Conduct Policy – with the deposition of WILLIAMS (and travel between Scottsbluff, Kearney and Lincoln) in-between and in preparation for the scheduled January 5, 2025 deposition (and more travel to Lincoln) of another University of Nebraska witness. While seventeen months between service of a Request for Production and production of a responsive policy may be undue delay, approximately two weeks between production of that policy and submission of a motion for leave to amend, proposed First Amended Complaint, and evidence and brief in support of such motion is not undue delay.

The dynamic between an expired deadline for amendments and belated discovery of facts underpinned the analysis of the United States District Court for the Northern District of California in *Navarro v. Eskanos & Adler*[11], a Fair Debt Collections Practices Act case. The plaintiff had filed suit in March 2006; the original deadline for amendments was set as July 2006. In October

---

[11] *Navarro v. Eskanos & Adler*, 2006 WL 3533039 (N.D. Cal. 2006).

2006, the plaintiff deposed two attorneys in the defendant law firm. In those depositions, she learned that the attorneys in the defendant's law firm limited their review of collections letters to verification of the address and the size of the debt, with no substantive reviews of the accounts in question. She moved, out of time, to amend her complaint to add new federal and state causes of action that arose from that deposition testimony.

The defendants of *Navarro* argued that the plaintiff was substantially out of time for filing a motion for leave to amend the complaint. The plaintiff responded that she filed her motion within two weeks of discovering the basis of her new allegations.[12] The district court redirected the inquiry as not one of "how long since the plaintiff filed the complaint," but of "how long since the plaintiff discovered the new evidence":

> A two-week delay does not constitute a failure in diligence. Defendants mistakenly focus on the length of time between the deadline for filing an amended complaint and the plaintiff's motion, instead of the time between plaintiff's discovery of the new facts and her asking leave of the court to file the amended complaint.[13]

Because the plaintiff showed diligence by seeking leave to amend her complaint upon learning of the basis of her new claims, the *Navarro* court sustained her motion and granted leave to amend.

In *Community Voice Line LLC v. Great Lakes Communication Corp.*[14], the United States District Court for the Northern District of Iowa considered a motion by the plaintiff to file a second amended complaint. In the original complaint, filed in May 2012, the plaintiff had pled causes of action in breach of contract and unjust enrichment. At the end of July 2013, the defendant produced previously-withheld documents that the district court had ordered it to produce. Three

---

[12] *Id.* at *2.
[13] *Id.* at *3.
[14] *Community Voice Line LLC v. Great Lakes Communication Corp.*, 295 F.R.D. 313 (N.D. Iowa 2013).

months after the July 2013 document production, the plaintiff moved to amend the complaint to add five new defendants and eleven new causes of action. The defense resisted the motion, alleging (among other reasons) that the plaintiff had unduly delayed to assert the new causes of action.

Per the scheduling order in *Community Voice Line*, the deadline for amendments apparently had not yet passed (seventeen months after the complaint was filed).[15] Nonetheless, the defense argued that the plaintiff could have sought leave to amend much earlier, because its proposed new claims were, allegedly, similar to the claims of the original complaint and to a companion case that was pending in state court in Maryland.[16] The plaintiff replied that it had not included the proposed new claims of conspiracy and collusion in the Maryland case, because it was unaware of a factual basis for those claims; and that it "did not learn of the facts supporting the proposed new claims until [the defendant] produced documents in July 2013."[17]

The district court disagreed. It found "no evidence that [the plaintiff] had a factual basis for all of its amended claims before July 2013, when [the defendant] belatedly produced hundreds of documents."[18] It further observed that

> it can hardly be said that any delay since March 2013 was solely [the plaintiff's] fault given [the defendant's] well-documented delays in producing the documents [the plaintiff] now relies on.[19]

Under the circumstances, the plaintiff had not waited an unreasonable time or unduly delayed by seeking leave to amend three months after receipt of newly-produced documents to support the proposed new cause of action.

---

[15] In submitting the proposed order for case progression, the undersigned should have asked to hold open the deadline for amendments for much longer … and in the future, insofar as the Federal Rules themselves don't seem to prohibit a lengthy deadline for amendments after the filing of the complaint, that's what the undersigned will do.
[16] *Id.* at 319.
[17] *Id.*
[18] *Id.* at 320.
[19] *Id.* at 320.

There is no evidence that Plaintiff has "used delay to gain a tactical advantage[20]," such as to "sandbag" a witness in deposition. To the contrary: BRUN revealed the Conduct Policy on the last working day before Plaintiff deposed WILLIAMS (and after Plaintiff deposed the Title IX Investigator), and Plaintiff is providing Defendants with notice of this Motion two weeks later, and before the next deposition after WILLIAMS' of a University of Nebraska Department of Athletics witness.

B. <u>Plaintiff could not have discovered the new cause of action</u>

When a moving party shows that the acts of the opposing party substantially create the delayed need to amend, that showing establishes "good cause" for the delay.[21] That principle applies here. Plaintiff served a Request for Production seeking policies: that should have generated production of policies. Instead, it generated a vale of objections and misdirection to the Board of Regents Policies. It would send a strange message if BRUN were rewarded for its choices in how to respond to Request No. 17 by finding that it is Plaintiff, not BRUN, that has failed to be diligent.

The United States District Court for the District of New Mexico reviewed a scenario like that presented here in the civil rights case of *Garcia v. Board of Cty. Comm'rs of Bernalillo Cty.*[22] At what the *Garcia* court characterized as "the tail end of the discovery period," well after the deadline for amending the pleadings and the expiration of the statute of limitations had passed, the plaintiffs sought to amend their complaint. The plaintiffs explained that they had only learned

---

[20] *Robertson v. White*, 111 F.R.D. 607, 612 (W.D. Ark. 1986).

[21] *See, e.g., Summers v. Missouri Pac. R.R. Sys.*, 132 F.3d 599, 604-06 (10th Cir. 1997) (where defendants successfully moved to exclude the plaintiffs' expert whom the defendants had initially recommended, the plaintiffs had shown good cause to amend the scheduling order to allow for a new expert).

[22] *Garcia v. Board of Cty. Comm'rs of Bernalillo Cty.*, 2010 WL 11618983 (D.N.M. 2010).

in discovery of the role played by a particular physician, whom they wished to add as a defendant; they also wanted to add new claims against an existing defendant.

The existing defendant had failed to disclose the putative new defendant as a witness. Several months after the pleading deadline but well before the plaintiffs moved for leave to amend, the plaintiffs' expert received medical reports that contained the putative new defendant's name, but did not describe his medical duties at the jail. As the plaintiffs explained, they did not understand that physician's "high degree of participation in treating [the decedent] from the reports"; and they did not learn of the relative roles of the existing defendant and the putative new defendant until the existing defendant testified at his deposition for the first time that he never saw or tried to treat the decedent until after the decedent passed away. Two months after the existing defendant's deposition, the defense filed motions for summary judgment, asserting for the first time that it was the putative new-defendant and not the existing defendant who examined and treated the decedent. Two weeks after that, the plaintiffs moved for leave to file an amended complaint.

The *Garcia* court analyzed that motion under both Rule 16 and Rule 15. The court found that it mattered that the defense had not disclosed the identity of the putative new defendant in its Rule 26 disclosures, but had thereafter based its motion for summary judgment on the claim that it was the putative new defendant who had provided primary treatment to the decedent in the weeks before his unexpected death.[23] The fact that lab reports listed the putative new defendant's name was not enough, as "that is still more than a month after the pleadings deadline."[24]

---

[23] *Id.* at *10.
[24] *Id.* at *9.

Because the plaintiffs had, in planning discovery, "reasonably relied on [the existing defendant's disclosures, which erroneously omitted [the putative new defendant]," the *Garcia* court found that the plaintiffs had shown good cause for their delayed request for leave to amend. The court wrote:

> "[O]ne of the principal purposes of Rule 16 has been to reduce the likelihood that the outcome of civil litigation would turn on procedural subtlety or tactical advantage," and instead to "secure[ ] justice on [the] merits." Moore's Federal Practice, § 16.03[1][c][ii], at 16-22-16-23. Where, as here, the plaintiff only learned information necessary to amend well after the pleading deadline and the defendant contributed to causing the delayed awareness, it is proper to grant the plaintiff leave to amend. The Court finds that granting leave to amend here will forward "justice on [the] merits," as Rule 16 requires, rather than justice based on a strategically played hand.[25]

In *Pumpco Inc. v. Schenker Int'l, Inc.*,[26] the United States District Court for the District of Colorado found good cause, pursuant to Rule 16, to allow a plaintiff to add claims after the pleading deadline. It was only through discovery responses from another defendant that the plaintiff learned that the first defendant had made false statements in connection with the plaintiff's purchase of the goods at issue in that case. The court wrote that "[t]he fact that a party first learns, through discovery or disclosures, information necessary for the assertion of a claim after the deadline to amend established in the scheduling order has expired constitutes good cause to extend that deadline."[27]

There is a live risk here of "justice based on a strategically played hand."[28] In her first written discovery requests on July 2, 2024, Plaintiff requested:

---

[25] *Id.* at *10.
[26] *Pumpco Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001).
[27] *Id.* at 668; *see also Southern v. United States*, 503 F. Supp.2d 829, 832 (W.D. Tex. 2007) (finding "good cause" where plaintiff's counsel alleged that he first learned the information necessary for the amendment months after the scheduling deadline had passed); and *Safeway, Inc. v. Sugarloaf Partnership LLC*, 423 F. Supp.2d 531 (D. Md. 2006).
[28] *Garcia, supra* at *10.

      all rules, policies, procedures and protocols for the University of Nebraska Cornhusker women's basketball team in effect from February 18, 2022 to the present. This includes, but is not limited to, the subjects of:

- team philosophy;
- team meetings;
- academic success;
- athletic medicine;
- social media;
- personal conduct;
- team travel;
- Name, Image & Likeness;
- communication with coaches;
- sexual/romantic relationships with employees, agents or volunteers of the Athletic Department;
- reporting misconduct; and
- any other rules, policies, procedures or protocols on any topic.

BRUN objected to that Request, characterizing it as "irrelevant and unduly burdensome." In its objections, BRUN did not advise whether it had withheld documents pursuant to this Request. Even after Plaintiff directly asked BRUN to advise whether it had withheld documents pursuant to this Request, BRUN declined to do so.

      The policies BRUN did produce did not include the University of Nebraska Department of Athletics Conduct Policy. The Department of Athletics Student Handbook did not contain the Conduct Policy; it referenced an internal "code of conduct," but there is not a policy (or a reference to a policy) within the Department of Athletics Student Handbook that clarifies a student-athlete's rights if that student-athlete is accused of misconduct and is in jeopardy of removal from her team. The Women's Basketball Team Handbook, created by Defendant WILLIAMS, does not include the Conduct Policy. The publicly-available Board of Regents Policies, which BRUN has produced

several times, do not include the Conduct Policy. BRUN also did not produce or identify the Conduct Policy in its Rule 26 Disclosures.[29]

After the parties' meet-and-confer session on August 15, 2025, BRUN supplemented its original production several times – still declining to specify whether it was withholding documents pursuant to its objection to Request No. 17 above. Not until December 19, 2025 did BRUN "discover" the Conduct Policy, and produce it to the undersigned. This was on the last working day before WILLIAMS' deposition.

By December 19, 2025, the undersigned had deposed the University of Nebraska's Title IX Investigator, who did not reference the Conduct Policy in her deposition. The undersigned had also begun, on December 4, the deposition of then-Director of Athletics and Defendant ALBERTS, who also did not reference the Conduct Policy in the first half of his deposition. By the text of the Conduct Policy, it is ALBERTS who was charged with administering the Conduct Policy at the time of the events in question.

"[T]he failure to disclose in a timely manner is equivalent to failure to disclose."[30] The point of disclosing requested and discoverable documents in a timely manner is fairness: it does not behoove a responding party to "stand on our objections," then produce a very relevant policy eleven months later after depositions are underway, and then criticize the failure of the requesting party for not realizing that evidence existed.

C. Plaintiff is not acting in bad faith.

---

[29] *See* Fed. R. Civ. P. 26(a), advisory committee's note to 1993 amendment (explaining that initial disclosures are meant "to accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information").
[30] *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998).

Bad faith is a subjective inquiry that requires proof that the moving party acted "with intent to deceive, harass, mislead, delay, or disrupt".[31] Delay alone does not amount to bad faith.[32] Bad faith requires more than mere negligence or bad judgment; it is the "conscious doing of a wrong because of dishonest purpose or moral obliquity."[33]

Plaintiff has not acted in bad faith in seeking this amendment. This is Plaintiff's first effort to amend the Complaint. It follows, by a couple of weeks, the untimely and unexplained December 19, 2025 production by BRUN of a policy that Plaintiff requested in July 2024. There is no evidence to support a finding that the undersigned is bringing this motion "because of dishonest purpose or moral obliquity."[34]

D. Any prejudice to Defendants from the proposed amendment is not unfair.

"It is not every form of prejudice that will induce the courts to disallow amendments. To the extent that the complaining party causes the prejudice, it is not … 'undue' within the meaning of the rule."[35] As is set forth above, this Motion comes within about two weeks of BRUN's belated disclosure of the Conduct Policy, seventeen months after Plaintiff requested it. While it may cause prejudice to Defendants if this Court allows the requested amendment, such prejudice would not be unfair.

The only new facts pled in the proposed First Amended Complaint arise from the Conduct

---

[31] *Id.*
[32] *EcoNugenics, Inc. v. Bioenergy Life Science, Inc., supra*, 355 F. Supp.3d at 791.
[33] *Id.* citing *United States v. Manchester Farming Partnership*, 315 F.3d 1176, 1185 (9th Cir. 2003); *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999); *Wizards of the Coast LLC v. Cryptozoic Entertainment LLC*, 309 F.R.D. 645 (W.D. Wash. 2015).
[34] *Id.* citing *United States v. Manchester Farming Partnership*, 315 F.3d 1176, 1185 (9th Cir. 2003); *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999); *Wizards of the Coast LLC v. Cryptozoic Entertainment LLC*, 309 F.R.D. 645 (W.D. Wash. 2015).
[35] *Jacobs v. McCloskey & Co.*, 40 F.R.D. 486, 488 (E.D. Pa. 1966).

Policy itself – a policy of the University of Nebraska Department of Athletics, presumably known and trained to every individual Defendant by BRUN.  As to the impact of allowing the proposed amendment, courts have held that extending deadlines for discovery, in light of information a party learns through discovery, is not the type of prejudice that precludes amendment.[36]  The need to conduct additional discovery or file additional dispositive motions alone cannot serve as a reason to deny the motion.[37]  Nor is an amendment prejudicial if it merely adds an additional theory of recovery to the facts already pled."[38]

BRUN has not yet explained the reason for not producing the Conduct Policy until December 19, 2025.  Whatever the reason, if a party should have to bear the prejudice of that belated disclosure, it should not be the requesting party.  The party to bear any such prejudice should be the party that objected, then refused to answer whether it had withheld documents pursuant to its objection, and then allowed months more to pass before producing a policy requested nearly a year and a half before.

### Conclusion

For these reasons, Plaintiff respectfully asks this Court to SUSTAIN Plaintiff's Motion for Leave to File Amended Complaint.

### Certificate of Word Count Compliance

The undersigned hereby certifies that this Brief contains 3,022 words.

---

[36] *Macias v. Cleaver*, 2016 WL 8730687 at *5 (E.D. Cal. 2016).
[37] *Newton v. American Debt Servs., Inc.*, 2013 WL 5592620 (N.D. Cal. 2013); *see also S.S. Silberblatt, Inc. v. E. Harlem Pilot Block--Bldg. 1 Hous. Dev. Fund Co.*, 608 F.2d 28, 43 (2d Cir. 1979) ("This burden, or the burden of undertaking discovery, which [defendant] would have shouldered had the proposed amendment been incorporated in the complaint as originally filed, hardly amounts to prejudice outweighing the policy of Rule 15(a) in favor of permitting the parties to obtain an adjudication of the merits").
[38] *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006).

ASHLEY SCOGGIN, Plaintiff,

By: /s/ *Maren L. Chaloupka*
   Maren Lynn Chaloupka, #20864
   Chaloupka Law, LLC
   1906 Broadway
   P.O. Box 1724
   Scottsbluff, NE  69363-1724
   (308) 270-5091
   mlc@chaloupkalaw.net

   -AND-

   Nathan J. Bruner – NSBA # 23629
   Bruner Frank Schumacher
   5804 1st Avenue
   P.O. Box 2230
   Kearney, NE  68847
   (308) 455-1046
   nbruner@nebraskalawfirm.net

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument has been sent via CM/ECF on this 2nd day of January 2026, to the following:

Denise E. Frost
Johnson & Mock, PC LLO
9900 Nicholas Street, #225
Omaha, NE  68114
dfrost@johnsonandmock.com

Bren H. Chambers
Deputy General Counsel
University of Nebraska
3835 Holdrege Street
Lincoln, NE  68583-0745
bchambers@nebraska.edu

Susan K. Sapp
Lily Amare
Cline Williams Wright Johnson & Oldfather, L.L.P.
1900 U.S. Bank Building
233 South13th Street
Lincoln, NE 68508
ssapp@clinewilliams.com
lamare@clinewilliams.com

   /s/ *Maren Lynn Chaloupka*