IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ASHLEY SCOGGIN, | ) | Case No. 4:24-CV-3039 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BOARD OF REGENTS OF THE | ) | |
| UNIVERSITY OF NEBRASKA, and | ) | |
| Individuals AMY WILLIAMS, TREV | ) | |
| ALBERTS, and CHUCK LOVE, JR., In their | ) | |
| individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

---

**BRIEF IN OPPOSITION TO PLAINTIFF'S OBJECTIONS TO FINDINGS,
RECOMMENDATION AND ORDER**

---

Submitted by:

Susan K. Sapp, #19121
Lily Amare, #25735
CLINE WILLIAMS WRIGHT JOHNSON
    & OLDFATHER, L.L.P.
1900 U.S. Bank Building
233 South 13th Street
Lincoln, Nebraska 68508
Telephone: (402) 474-6900
Fax: (402) 474-5393
ssapp@clinewilliams.com
lamare@clinewilliams.com

AND

Bren H. Chambers, #23150
Vice President and General Counsel
University of Nebraska
3835 Holdrege Street
Lincoln, NE 68583-0745
(402) 472-1201
bchambers@nebraska.edu

Dated the 31st day of March, 2026.

Pursuant to Fed. R. Civ. P. 72(a) and NECɪᴠR. 72.2, the Board of Regents of the University of Nebraska ("BRUN"); Amy Williams ("Williams"), in her individual capacity; and Trev Alberts ("Alberts"), in his individual capacity (collectively referred to as "Defendants"), respectfully submit this Brief in Opposition to Plaintiff's Objection to Findings, Recommendation and Order [Doc. 147].

## I.      INTRODUCTION

Plaintiff objects to the Magistrate Judge Ryan C. Carson ("Magistrate Judge") Findings, Recommendation, and Order, and seeks leave to amend her complaint to add a § 1983 claim against all Defendants based on an alleged violation of the University of Nebraska Department of Athletics Student-Athlete Conduct Policy (the "Conduct Policy"). Her objection should be overruled because the proposed amendment is futile.  It identifies no new constitutional deprivation, fails to allege a deprivation of a protected interest, improperly relies on discretionary policy language, and is barred by both sovereign and qualified immunity.

Plaintiff also challenges the denial of her request to amend the progression order but cannot demonstrate the required diligence. The record reflects months of inactivity, repeated missed deadlines, and repeated failures to timely seek court intervention, including missing the deadline for her own reply brief. Her accusations of bad faith are unsupported and irrelevant to the diligence inquiry, particularly in light of her failure to respond to Defendants' September compromise proposal.

Plaintiff's position is further undermined by her filing of a duplicative complaint on February 17, 2026, asserting claims arising from the same facts as the operative complaint in this action.[1] Filed shortly after her final brief in support of her motion for leave to amend the Complaint in this case [*See* Doc. Doc. 112], this new lawsuit appears designed to

---

[1] To find the Duplicative Complaint, see *Ashley Scoggin v. Keith Zimmer, in his individual capacity, and Meagan Counley, in her individual capacity*, Case No. 4:26-CV-3053 (D. Neb. Feb. 17, 2026).

2

circumvent the Court's deadlines and includes claims that could have and should have been raised in this current case.

Because the proposed amendment is futile and Plaintiff has not demonstrated diligence, her objections should be overruled and the Magistrate Judge's Findings, Recommendation, and Order affirmed.

## II.    STANDARD OF REVIEW

A district court may refer a nondispositive "pretrial matter" to "a magistrate judge to hear and determine." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). "A district court may reconsider a magistrate judge's ruling on nondispositive pretrial matters where it has been shown that the ruling is clearly erroneous or contrary to law." *Ferguson v. United States,* 484 F.3d 1068, 1076 (8th Cir. 2007) (citing 28 U.S.C. § 636(b)(1)(A)); *see also* Fed. R. Civ. P. 72(a) ("The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."). "'A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Chase v. C.I.R.,* 926 F.2d 737, 740 (8th Cir. 1991) (quoting *United States v. Unites States Gypsum Co.,* 333 U.S. 364, 395 (1948)). "An order is contrary to law if it 'fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Haviland v. Catholic Health Initiatives-Iowa, Corp.,* 692 F. Supp. 2d 1040, 1043 (S.D. Iowa 2010) (quoting *Knutson v. Blue Cross & Blue Shield of Minn.,* 254 F.R.D. 553, 556 (D. Minn. 2008)). A district court's "review of a magistrate judge's ruling on a nondispositive issue is 'extremely deferential.'" *Smith v. Bradley Pizza, Inc.,* 314 F. Supp. 3d 1017, 1026 (D. Minn. 2018) (quoting *Scott v. United States,* 552 F.Supp.2d 917, 919 (D. Minn. 2008)).

When a party objects to a magistrate judge's order concerning leave to amend a complaint, the court's standard of review depends on the basis for that ruling. "Ordinarily, the decision of whether to allow a plaintiff leave to amend a complaint is within the district

court's discretion, however, when the court denies leave on the basis of futility," the "district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure and appellate review of this legal conclusion is also de novo. " *Cornelia I. Crowell GST Tr. v. Possis Med., Inc.*, 519 F.3d 778, 781–82 (8th Cir. 2008). Consistent with this principle, where the objection challenges a denial of leave to amend on futility grounds, the court must review "de novo any part of the magistrate judge's disposition that has been properly object to." FED. R. CIV. P. 72(b)(3); *see also Am. Ins. Co. v. St. Jude Med., Inc.*, 597 F. Supp. 2d 973, 977 (D. Minn. 2009) (holding same).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations omitted). "[T]he complaint must contain facts which state a claim as a matter of law and must not be conclusory." *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 627 (8th Cir. 1999) (citing *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995)). "When ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996)).

## III.    ARGUMENT

### A.    THE MOTION FOR LEAVE TO AMEND WAS PROPERLY DENIED AS FUTILE.

The motion for leave to amend was properly denied as futile. Defendants hereby reference and incorporate the facts and arguments set forth in the brief previously submitted to the Magistrate Judge on this issue [Doc. 108] and respond further as follows.

Plaintiff does not object to the Magistrate Judge's rulings on the following core issues:

- The Magistrate Judge's finding that the "Plaintiff identifies no statute, regulation, contract, or university policy guaranteeing continued roster status or team participation, nor does she allege that her athletic scholarship was revoked or that any defined financial benefit previous provided was withdrawn;" as such "under *Roth*, such an expectation, without an independent source of entitlement grounded in contract, statute or policy, is insufficient to establish a protected property interest." [Doc. 132, pp. 10-13.] The Magistrate Judge further held there is no clearly established constitutional right to continued participation in intercollegiate athletics. [Doc. 132, pp. 16-17.] Plaintiff's only objection references "her professional goals," [Doc. 147, ¶ 17], which she asserts in challenging the Magistrate Judge's conclusion that no protected liberty interest exists [Doc. 147, ¶ 17]. However, Plaintiff did not mention or allege in the proposed amended complaint protected property or liberty interest in continued "professional goals." [Doc. 92, ¶ 96].

- The Magistrate Judge's finding that the proposed claim fails as to Love because the complaint does not allege his direct involvement in the removal decision, as required for liability under § 1983. [Doc. 132, pp. 17-18.]

- The Magistrate Judge's finding that the amendment asserts no new deprivation of a protected interest, and that it relies on the same removal decision and alleged policy violations, which do not create a constitutional claim, and therefore would not survive a Rule 12(b)(6) motion. [Doc. 132, pp. 18-19.]

5

Accordingly, based on Plaintiff's failure to object to these rulings, the Magistrate Judge's Findings, Recommendation, and Order should be affirmed.

**1.  Additionally, the remaining rulings in the Magistrate Judge's Findings, Recommendation, and Order should also be affirmed, as explained below. The alleged deposition testimonies do not overcome qualified immunity.**

Plaintiff does not contest that BRUN is protected by sovereign immunity but argues that the individual defendants are not. This framing reflects a conflation of sovereign immunity and qualified immunity. The relevant question, for purposes of the individual defendants, is not sovereign immunity, but whether the individual defendants, Williams, Alberts, and Love, are entitled to qualified immunity. As the Magistrate Judge correctly determined, they are, because the proposed amendment fails at every turn of the qualified immunity analysis, including clearly established constitutional right. [Doc. 132, pp. 10 - 16.]

Plaintiff argues that deposition testimony obtained after filing the Motion for Leave to Amend somehow alters this conclusion. It does not. Additional factual development cannot cure the legal deficiencies identified by the Magistrate Judge—namely, the absence of a protected property or liberty interest, the lack of any constitutional entitlement arising from the Conduct Policy, and the failure to identify a clearly established constitutional right.

Moreover, Plaintiff's objection improperly relies on arguments and purported evidence that were not presented to the Magistrate Judge. To properly object, a party must identify the specific findings challenged and the legal basis for the objection. NECivR 72(a). The rules further prohibit the submission of new evidentiary materials or argument at this stage absent court approval, and even in dispositive matters, additional evidence is not permitted without a showing of good cause. NECivR 72(b). Accordingly, the matters raised for the first time in the objection are not properly before the Court and should not be considered. *See Ridenour v. Boehringer Ingelheim Pharm., Inc.*, 679 F.3d 1062, 1067 (8th Cir.

2012); *see also Roberts v. Apfel,* 222 F.3d 466, 470 (8th Cir.2000) (stating that an argument made before a district court was ineffectual if not first made to the magistrate judge).

Here, Plaintiff has not submitted any affidavit or properly introduced deposition testimony to support the assertions contained in Doc. 147 ¶¶ 7-10 & 17, and, in any event, such assertions and materials are improper where futility is evaluated under the Rule 12(b)(6) standard. *See Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir. 1999) (When considering a motion to dismiss, the Court must ordinarily confine its analysis to the four corners of the complaint and ignore all materials outside the pleadings).

Nor can Plaintiff establish good cause. The depositions she now attempts to rely on were completed before the Magistrate Judge issued the Findings, Recommendation, and Order on March 4, 2026, including the depositions of: Chuck Love, which occurred February 4, 2026 [See Doc. 96]; Christian Eisenhauer, which occurred on February 5, 2026 [See Doc. 97]; 30(b)(6) designees, which occurred on February 6, 2026 [See Doc. Nos. 99-102]; Keith Zimmer, which occurred on January 5, 2026 [See Doc. 81]; Jamie Vaughn, which occurred on February 19, 2026 [See Doc. 111] and the continued deposition of Trev Alberts, which occurred on February 19 [See Doc. 110]. Despite having opportunity, Plaintiff never sought leave to supplement the record or otherwise bring this information to the Magistrate Judge's attention prior to the ruling, including at the status conference held on March 4 [Doc. 131]. Accordingly, Plaintiff's reliance on new, unsupported factual assertions is procedurally improper and substantively irrelevant (as discussed herein and below).

**2.** **The Magistrate Judge correctly held that the Conduct Policy does not create a constitutionally protected entitlement.**

The Magistrate Judge correctly concluded the Conduct Policy does not create a constitutional protected entitlement. Plaintiff's objection, which attempts to emphasize the use of the word "shall" and argues that the policy imposes mandatory obligations on the Director of Athletics, distorts and misinterprets the plain language of the policy.

As courts have repeatedly recognized, the use of "shall" does not automatically create a mandatory outcome. For example, in *Cnty. of Ramsey v. Merscorp Holdings, Inc.*, 962 F. Supp. 2d 1082, 1087–88 (D. Minn. 2013), aff'd, 776 F.3d 947 (8th Cir. 2014), the court held that the statute's "shall" was directive, not mandatory, because the statute outlined consequences for non-compliance rather than eliminating discretion. The Court held, to interpret "shall" as creating an absolute duty would render the rest of the statutory language superfluous. *Id.*

Here, the Conduct Policy vests full discretion in the Director of Athletics to determine whether the policy applies. The directive that the Director "shall, in good faith and using reasonable judgment, decide whether the policy applies" establishes who decides, not the result. It does not mandate any particular outcome and thus imposes no substantive limitations on discretion. Moreover, the policy expressly preserves the head coach's independent authority to discipline athletes for team rule violations, separate and apart from any proceedings under the Conduct Policy. This underscores that the Conduct Policy neither mandates a particular outcome nor creates a property interest in continued athletic participation.

Plaintiff cannot identify any conduct of hers that would have even brought her within the scope of the Conduct Policy. She was removed from the team for violating team rules, specifically lying and breaking curfew, as she herself alleged [Doc. 92, ¶ 135–38.], not for any listed category of serious nonacademic misconduct. The policy expressly preserves the head coach's independent authority to discipline athletes for team rule violations:

> The head coach of each sport has the authority to discipline, suspend and/or dismiss any student-athlete on his/her team in consultation with the head coach's sport administrator for violation of team rules separate and apart from proceeding under this Student-Athlete Conduct Policy.

[Doc. 107-2, p. 1.] This underscores that the Conduct Policy neither mandates a particular outcome nor creates a property interest in continued athletic participation.

Plaintiff's reliance on *Doe v. University of Nebraska,* 451 F. Supp. 3d 1062 (D. Neb. 2020) is misplaced. The Magistrate Judge did not hold that a liberty interest may never arise by state laws or policies. To the contrary, the Magistrate Judge correctly held "state regulations create a protected interest only when they (1) place substantive limitations on official discretion and (2) contain explicit mandatory language requiring a particular outcome if defined predicates are met." [Doc. 132, p. 15 (citing *William v. Nix,* 1 F.3d 712, 717 (8th Cir. 1993).] Courts must closely examine the language of the relevant policy when determining whether an enforceable liberty interest is created. *Forrester v. Bass,* 397 F.3d 1047, 1055 (8th Cir. 2005) (quoting *Ky. Dep't of Corr. v. Thompson,* 490 U.S. 454, 461 (1989)).

In fact, the very case Plaintiff cites confirms this standard: "A state-created liberty interest arises when a state imposes 'substantive limitations on official discretion.'" *Doe,* 451 F.Supp. at 1100 n.31 (quoting *Forrester,* 397 F.3d at 1055).

Further, Plaintiff's effort to distinguish *Quinn v. Doherty,* 637 F. Supp. 3d 647, 660 (D. Minn. 2022), because it involved state statutes rather than an internal policy, misses the point. *Quinn* is relevant not for the source of the procedures, but for the governing constitutional rule: not every procedural framework creates a protected liberty interest. It held that the Eighth Circuit and the United States Supreme Court have made clear, a protected liberty interest exists only where there are "substantive limitations on official discretion" coupled with "explicitly mandatory language" requiring a particular outcome. *Id.* (citing *Forrester,* 397 F.3d at 1055 (quoting *Olim v. Wakinekona,* 461 U.S. 238, 249 (1983)); *Thompson,* 490 U.S. at 463).

Critically, *Quinn* also recognizes that the Eighth Circuit has already rejected the premise underlying Plaintiff's argument: even detailed statutory schemes do not create constitutional liberty interests. *See Doe v. Hennepin County,* 858 F.2d 1325, 1328 (8th Cir. 1988) (citing *Myers v. Morris,* 810 F.2d 1437 (8th Cir. 1987)). If duly enacted statutes do not suffice, an internal athletic policy necessarily cannot either—absent the same mandatory,

outcome-determinative language, which is lacking here. Hence, as Magistrate Judge again cautioned, "constitutionalizing every state procedural right would stand any due process analysis on its head." [Doc. 132, p. 16 (quoting *Quinn*, 637 F. Supp. 3d at 661)].

Because the Conduct Policy does not eliminate discretion or guarantee a particular outcome, and because Plaintiff cannot allege conduct triggering a protected entitlement, she cannot establish a constitutionally protected interest. The Magistrate Judge therefore correctly concluded that the proposed amended claims are futile. Qualified immunity protects Alberts, Williams, and Love, and the Court should uphold the Magistrate Judge's orders denying Plaintiff's motion to amend. [Doc. 132, p. 16 (quoting *Quinn*, 637 F. Supp. 3d at 661)].

### 3. Magistrate Judge correctly found Plaintiff failed to allege a protected liberty and property interest.

Plaintiff's argument that the Magistrate Judge erred by considering the "stigma plus" issue at the Rule 12(b)(6) stage misunderstands the standard for evaluating futility. When a court denies leave to amend as futile, "it means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Hintz v. JPMorgan Chase Bank, N.A.,* 686 F.3d 505, 511 (8th Cir. 2012); *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) ("the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings.").

In other words, at this stage, the sufficiency of a claim turns on the allegations in the complaint, not on whether later-discovered evidence might support it. *See Kackley v. CMS, No. 8:05CV284, 2006 WL 120150, at \*1 (D. Neb. Jan. 17, 2006)* ("At the Rule 12(b)(6) stage, we do not assess 'the truth of what is asserted or determin[e] whether a plaintiff has any evidence to back up what is in the complaint . . . Thus, a claim should be liberally construed in the light most favorable to the plaintiff and should not be dismissed unless it appears

beyond doubt that the plaintiff can prove no set of facts which would entitle her to relief.") (quoting *Browning v. Clinton,* 292 F.3d 235, 241–42 (D.C. Cir. 2002). Therefore, the Magistrate Judge did not prematurely decide this issue, because at the stage of evaluating whether the proposed amendment could survive a Rule 12(b)(6) motion, the court considers the *allegations*, not whether a plaintiff has evidence to support the allegations.

This is true even in assessing whether the "stigma plus" test is satisfied. *See, e.g., Karimi v. Donovick,* No. 8:18CV3088, 2019 WL 1427151, at *7 (D. Neb. Mar. 29, 2019) ("the Court finds that Karimi's stigma-plus claim fails because he has not alleged termination from his employment or the alteration or extinguishment of a legal right or status in connection with the allegedly stigmatizing statements."); *A.W. v. Nebraska,* No. 8:14CV256, 2015 WL 4249845, at *3 (D. Neb. July 13, 2015) (assessing whether the test is satisfied when considering a motion to dismiss pursuant to 12(b)(6)). Thus, it is proper to conclude that the "stigma plus" test is not satisfied based on the allegations.

As the Eighth Circuit has repeatedly held, "A person's reputation, alone, is not a protected liberty or property interest. But state action that both damaged a person's reputation and 'distinctly altered or extinguished' a 'right or status previously recognized by state law,'" is sufficient to trigger procedural due process protections. *Kroupa v. Nielsen,* 731 F.3d 813, 818 (8th Cir. 2013) (quoting *Paul v. Davis*, 424 U.S. 693, 701, 711 (1976)). This is referred to as the "stigma plus" test. *Gunderson v. Hvass,* 339 F.3d 639, 644 (8th Cir. 2003).

Plaintiff's reliance on *Kroupa* to claim that it "clearly establishes the right at issue herein," is misplaced.  In *Kroupa*, the Eighth Circuit determined the plaintiff's legal status was altered when she was excluded from participation in 4-H because it altered "her future economic interest in a career in agriculture." *Kroupa,* 731 F.3d at 820. This does not clearly establish that Plaintiff's legal status was altered when she was removed from the basketball team because, as explained in *Kroupa*, "4–H participation, **unlike most high school athletics**, is a career-oriented program." *Id.* (emphasis added). Similarly, college athletics

11

are not career-oriented programs. *See, e.g., Knapp v. Northwestern Univ.,* No. 95 C 6454, 1996 WL 495559, at *2 (N.D. Ill. Aug.28, 1996), *rev'd on other grounds,* 101 F.3d 473, 7th Cir. 1996), *cert. denied,* 520 U.S. 1274, (1997) ("While participation in intercollegiate basketball has been recognized as a training ground for a professional basketball career, the possibility of obtaining that professional basketball career is too speculative to even constitute a present economic interest."). Thus, reliance on *Kroupa* to assert that Plaintiff's legal status was altered is misplaced. Plaintiff's career goals, like her NIL opportunities, are entirely speculative. Thus, Plaintiff fails to satisfy the "stigma plus" test.

Even considering the unsupported assertion, the Magistrate Judge's ruling should be affirmed. No set of facts could satisfy the "stigma plus" test here. Plaintiff points to only her alleged interest in "her professional goals." She identified no statement by Alberts, Williams, or Love that was "sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false." *A.W.,* 2015 WL 4249845, at *3. Nor does her reference to "professional goals" establish a protected interest. Property interests arise only from a legitimate claim of entitlement grounded in an independent source of law—not from a unilateral expectation or abstract desire. *Board of Regents v. Roth,* 408 U.S. 564, 575 (1972). As such, Plaintiff's asserted unilateral expectation of achieving "her" professional goals do not create a protected liberty or property interest.

Accordingly, Plaintiff failed to allege a clearly established constitutionally protected liberty interest in alleged reputational harm because she has failed to show there was a stigmatizing public statement made about her by Alberts, Williams, or Love, and she cannot plausibly allege that a recognized legal status of hers was altered. Therefore, qualified immunity protects Alberts, Williams, and Love.

Finally, Plaintiff's blanket assertion that she "take[s] issue with the Magistrate Judge's finding that Ashley did not have a protected property interest," is insufficient. NECivR 72.2 requires a party to specify both (1) the portions of the order being challenged

12

and (2) the legal basis for the objection. Plaintiff does neither. For the reasons set forth in the Defendants' initial Brief and the Magistrate Judge's Findings, Recommendation, and Order, the Court should affirm that no protected property interest and no clearly established constitutional right exists.

**B.     THE RENEWED MOTION TO AMEND THE PROGRESSION ORDER WAS PROPERLY DENIED.**

The Renewed Motion to Amend the Progression Order was properly denied for lack of good cause under Rule 16. Defendants incorporate herein by reference the facts and arguments set forth in their prior brief [Doc. 83] and supporting filings [Doc. Nos. 82, 82-1 through 82-25] submitted to the Magistrate Judge. Defendants further note as follows.

A scheduling order "may be modified *only* for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4) (emphasis added). The primary measure of good cause is the moving party's diligence. *Midwest Med. Sols., LLC v. Exactech U.S., Inc.*, 95 F.4th 604, 607 (8th Cir. 2024), *reh'g denied,* No. 22-2250, 2024 WL 1561617 (8th Cir. Apr. 11, 2024) (quoting *Bradford v. DANA Corp.,* 249 F.3d 807, 809 (8th Cir. 2001)). To satisfy Rule 16(b), the movant must establish that the scheduling deadlines "cannot be met despite [its] diligent efforts." *Duffy v. Father Flanagan's Boys Home*, No. 8:03CV31, 2005 WL 3479647, at *1 (D. Neb. Dec. 20, 2005).

Plaintiff fails to meet the good cause standard. As Plaintiff admits, she missed several deadlines in this case and said she should have done better for case progression. "These repeated lapses across discovery deadlines and briefing reflect more than an unavoidable complication. They reflect sustained failure to comply with the court's scheduling orders." [Doc. 132, pp. 23.] Plaintiff does not provide any explanation for how she showed diligent efforts. Nor could she, because the record in this case is clear: it reflects months of inactivity, a pattern of missed deadlines, and repeated failures to timely seek court intervention. As Magistrate Judge stated, Plaintiff "does not demonstrate that she was unable to seek relief within the existing progression deadlines." [*Id.* at 22.]

13

Rather than demonstrating diligence, Plaintiff instead offers the unsupported accusation that Defendants sought to "run out the clock" by asserting objections to her discovery requests. The record proves this argument lacks merit. This case has already proceeded under two progression orders, so Plaintiff had months—and then months more after the February 21, 2025, amended order—to identify experts, secure records, and litigate disputes within the Court's schedule. Instead of doing that, Plaintiff delayed discovery responses for months; promised supplementation (including medical records) but did not provide it; resisted subpoenas despite prior representations she had requested the same records; allowed alleged disputes to remain dormant for long stretches; and also missed the motion to compel deadline after representing she would file by October 20, then October 30, and then allowing the November 11, 2025, deadline to pass without filing.

Defendants expended substantial time and effort to move disputes toward resolution, including preparing and circulating a detailed 54-page worksheet charting each disputed request, the parties' positions, and compromise offers—yet Plaintiff has not responded to the worksheet to date. Additionally, more than 3,000 pages of documents have been exchanged in discovery. There simply is no evidence of bad faith by Defendants. Ultimately, a progression order may be modified **only** for good cause, and the primary measure of good cause is the moving party's diligence. Plaintiff cannot establish her diligence. As Magistrate Judge stated:

> An isolated oversight may be excusable. A sustained pattern is not. The court's deadlines are not aspirational and when multiple deadlines expire without timely action, the resulting prejudice cannot fairly be attributed to circumstance alone. The cumulative record does not reflect an unavoidable complication in discovery. It reflects repeated failures to adhere to the court's schedule and Rule 16 does not permit that history to be reframed as good cause.

[*Id.* at 23.] Simply, Plaintiff is not seeking modification because deadlines "cannot be met despite" diligent efforts; Plaintiff seeks modification because she did not use the time and extensions already granted and did not timely seek court relief when she claimed it was

14

needed. Rule 16(b) does not permit parties to revive lapsed deadlines under those circumstances.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court affirm Magistrate Judge's Findings, Recommendation, and Order.

Dated this 31st day of March, 2026.

BOARD OF REGENTS OF THE
UNIVERSITY OF NEBRASKA, and
Individuals AMY WILLIAMS, TREV
ALBERTS, Defendants


By:   /s/ Lily Amare
Susan K. Sapp, #19121
Lily Amare, #25735
Cline Williams Wright
 Johnson & Oldfather, L.L.P.
1900 U.S. Bank Building
233 South13th Street
Lincoln, NE 68508
(402) 474-6900
ssapp@clinewilliams.com
lamare@clinewilliams.com

AND

Bren H. Chambers, #23150
Vice President and General Counsel
University of Nebraska
3835 Holdrege Street
Lincoln, NE 68583-0745
(402) 472-1201
bchambers@nebraska.edu


## CERTFICATE OF COMPLIANCE

I, Lily Amare, hereby certify that this Brief complies with the limits set forth in NECivR 7.1(d). Further, based on the Word Count function of Microsoft Word 2013-word processing software, applied to include all text, including the caption, headings, footnotes, and quotations, I certify this Brief contains 4,760 words.

/s/ Lily Amare
Lily Amare


15

**CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties.

/s/ Lily Amare
Lily Amare