IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ASHLEY SCOGGIN,<br><br>                             Plaintiff,<br><br>v.<br><br>BOARD OF REGENTS OF THE<br>UNIVERSITY OF NEBRASKA, et al.,<br><br>                             Defendants. | Case No. 4:24-cv-3039<br><br>**REPLY BRIEF OF NONPARTY DERRICK PEARSON IN SUPPORT OF MOTIONS TO QUASH (Doc. 141), TO DISQUALIFY (Doc. 142), FOR PROTECTIVE ORDER (Doc. 143), AND FOR SANCTIONS (Doc. 144)** |

**INTRODUCTION**

Cline Williams Wright Johnson & Oldfather, L.L.P. ("Cline Williams") devotes twenty-five pages to arguing that its former client, Derrick Pearson, should sit for a deposition conducted by his former attorney's firm, on subjects about which the firm holds his confidences, with no structural protections whatsoever. Its brief confirms, rather than refutes, the need for the relief Mr. Pearson seeks.

Cline Williams does not dispute that Susan Sapp personally represented Mr. Pearson. It does not dispute that she obtained confidential information about his finances, personal relationships, associations, character, and credibility. It does not dispute that those subjects overlap with the topics on which the firm now seeks to examine him. Instead, Cline Williams argues that none of that matters because the prior representation is not "substantially related" to this case, and because Mr. Pearson's interests are not "materially adverse" to the University Defendants. Both arguments fail on the law and the facts. The Nebraska Rules of Professional Conduct are not aspirational guidance in this Court. They are the rules of this Court.

1

The Plaintiff, Ashley Scoggin, has also filed a response (Doc. 164) supporting Mr. Pearson's motions. Her submission provides additional factual context that strengthens the case for relief, including that the University Defendants have known for more than three years that Mr. Pearson was a potential witness in this matter, and that Cline Williams' own client, Defendant Chuck Love, has an undisclosed prior relationship with the firm.

## ARGUMENT

### I.    The Prior Representation Is Substantially Related to This Case.

Cline Williams' lead argument is that its representation of Mr. Pearson has "nothing to do" with Ashley Scoggin's Title IX and § 1983 claims. (Doc. 157 at 16-17.) This misapplies the "substantially related" standard under Nebraska Rule of Professional Conduct 3-501.9 (Rule 1.9).

The test is not whether the two matters involve the same parties or the same legal claims. The comments to Rule 1.9 are explicit:

> "Matters are 'substantially related' for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter."

Neb. Ct. R. of Prof. Cond. § 3-501.9, Comment [3]. Nebraska courts follow the rule and apply the "substantially related" test. *See State ex rel. FirsTier Bank, N.A. v. Buckley*, 244 Neb. 36, 503 N.W.2d 838 (1993) (matters are substantially related where the cause involves the same or substantially related subject matter handled by the former firm).

Ms. Sapp's own March 13, 2026, letter confirms the substantial relationship. In that letter, Ms. Sapp identified the specific categories of confidential information she obtained from Mr. Pearson. (Doc. 134 at 2.) Mr. Pearson is called as a damages and state-of-mind witness. The subjects on which Cline Williams seeks to examine him, including his financial support for Ms. Scoggin, his motivations, his credibility, and his relationship with Ms. Scoggin, map directly onto the categories of confidential information Ms. Sapp identified. The information obtained in the prior representation would "materially advance" the University Defendants' position in examining Mr. Pearson. These circumstances plainly satisfy the "substantially related" test.

Cline Williams asserts that "Ms. Sapp cannot discern the basis for any claim that the previous representation is 'substantially related' to this case." (Doc. 157 at 7, citing Sapp Dec. ¶ 7.) But Ms. Sapp's inability to see the relationship does not negate its existence. Her letter identifies the precise categories of information that overlap with the deposition subjects. The "substantially related" test is objective, not subjective. It does not depend on whether the former attorney perceives the connection. *See generally State ex rel. Wal-Mart Stores, Inc. v. Kortum*, 251 Neb. 805, 811-12, 559 N.W.2d 496, 501 (1997) (The Nebraska Supreme Court identified numerous objective factors for determining whether matters are "substantially related," none of which include an attorney's subjective assessment).

Moreover, Mr. Pearson is not required to reveal the specific confidences at issue to establish a substantial relationship. Courts may infer the possession of material

confidential information from the nature of the prior engagement and what information would ordinarily be learned during such a representation. *See State ex rel. Creighton Univ. v. Hickman, 245 Neb. 247, 512 N.W.2d 374 (1994)*. The nature of Ms. Sapp's representation, involving finances, personal relationships, character, and credibility, speaks for itself. Nebraska's statutory framework imposes this duty in unqualified terms: an attorney must maintain inviolate the confidence of his client "at any peril to himself." Neb. Rev. Stat. § 7-105(4).

## II.    The University Defendants' Interests Are Materially Adverse to Mr. Pearson.

Cline Williams argues that Mr. Pearson "is not a party" and therefore cannot be "materially adverse" to the University Defendants. (Doc. 157 at 17-18.) This reads "materially adverse" far too narrowly.

Rule 1.9(b) prohibits representation of a "person" whose interests are "materially adverse" to the former client. The University Defendants seek to compel Mr. Pearson's testimony against his will, on subjects where Cline Williams holds his confidences, using a subpoena issued by his former attorney's firm. The University Defendants' litigation interest is to minimize damages by undermining Mr. Pearson's expected testimony about the financial and emotional support he provided to Ms. Scoggin. Mr. Pearson's interest is to protect his confidences and avoid being examined by a firm that possesses them. Those interests are adverse in every meaningful sense.

Cline Williams' reading would create a loophole in Rule 1.9 that swallows the rule: a firm could exploit any former client's confidences so long as the former client was "merely" a witness rather than a named party. No court has adopted that

4

position, and the text of the rule does not support it. The rule protects "former clients," not "former clients who happen to be parties." *See Zerger & Mauer LLP v. City of Greenwood, 751 F.3d 928, 933 (8th Cir. 2014)* (successive representation conflict analysis applies to protect former client's interests regardless of posture).

Cline Williams' opposition is framed entirely under Nebraska Rule § 3-501.9(b), which governs firm-wide imputation. That framing concedes more than it acknowledges: it also quietly adds an element Pearson need not satisfy. Ms. Sapp personally represented Mr. Pearson. Nebraska Rule § 3-501.9(a) applies to her directly, without any imputation analysis:

> "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."

Neb. Ct. R. of Prof. Cond. § 3-501.9(a). That rule requires no showing of firm-wide shared confidences. It requires only that Sapp personally represented Pearson, that the matter is the same or substantially related, and that his interests are materially adverse. All three elements are met on this record. The firm is additionally disqualified under § 3-501.10, which imputes Sapp's conflict to every attorney in Cline Williams. Cline Williams' decision to litigate only under § 3-501.9(b) does not make § 3-501.9(a) disappear.

## III. Nebraska Applies an Irrebuttable Presumption of Shared Confidences.

Cline Williams' proposed workaround, substituting Denise Frost as examining attorney, fails as a matter of Nebraska law. Nebraska applies an irrebuttable

presumption that confidences obtained by one attorney are shared with every attorney in the firm. *State ex rel. Freezer Servs., Inc. v. Mullen,* 235 Neb. 981, 993, 458 N.W.2d 245, 253 (1990). This presumption is two-tiered: first, an attorney is conclusively presumed to have acquired client confidences during the representation; second, the attorney is conclusively presumed to have shared those confidences with the firm. *Id.* at 988.

This is not a rebuttable presumption subject to a "Chinese wall" defense. *Freezer Services* specifically rejected screening as a cure. *Id.* at 992-93. *State ex rel. FirsTier Bank, N.A. v. Buckley,* 244 Neb. 36, 503 N.W.2d 838 (1993), reaffirmed the irrebuttable presumption framework; *State ex rel. Creighton Univ. v. Hickman,* 245 Neb. 247, 512 N.W.2d 374 (1994), extended the rule to hold that even the association itself, without intimate involvement in the prior matter, triggers the presumption.

Nebraska Rule of Professional Conduct 3-501.10 does not provide a screening exception for lawyers in private firms. Screening is permitted only for support persons under Rule 3-501.9(e) and former government lawyers under Rule 3-501.11. For private practitioners, the only options are informed written consent from the former client or demonstrating that the matters are not substantially related, and neither condition exists here. Ms. Sapp's proposal to shield Denise Frost from the conflict is precisely the screening mechanism Nebraska's highest court has rejected.

The Frost arrangement fails for an independent reason as well. At Defendant Love's February 5, 2026 deposition, conducted at Cline Williams' Lincoln office, Love testified he had "been here before." When asked to explain, Ms. Frost objected on

attorney-client privilege and instructed him not to answer. (Doc. 164 at 4.) That privilege assertion by Love's own counsel at Cline Williams' offices is consistent with a joint defense or common interest arrangement between Love and the University Defendants. If such an arrangement exists, Ms. Frost is not an independent, unconflicted examiner. Information she obtains from Mr. Pearson would flow directly back into the joint defense pool accessible to Cline Williams' clients. Cline Williams has not addressed whether any joint defense agreement exists; the Court should not assume the arrangement is clean.

## IV. Ms. Sapp's March 13 Letter Confirms, Rather Than Cures, the Conflict.

Cline Williams devotes substantial briefing to arguing that the March 13 letter was requested by Mr. Pearson's counsel, and therefore cannot constitute a violation. (Doc. 157 at 19-21.) This mischaracterizes both the sequence of events and the nature of the violation.

The disclosure problem is not confined to the letter. On the March 13, 2026 meet-and-confer call, Ms. Sapp disclosed the nature of the prior representation, identified the Pearsons by name in connection with it, and stated that the University of Nebraska already knows facts related to the prior representation. The letter merely reduced to writing what Ms. Sapp had already disclosed orally.

Further, the content of the letter itself reveals confidential information. By identifying the specific categories of sensitive topics she will not ask about, Ms. Sapp disclosed the nature and scope of the confidential information she obtained in the prior representation. Listing what she will not ask about reveals what she knows.

Cline Williams cannot characterize this as "promising not to examine" without acknowledging that the promise itself identifies the confidential subjects.

That Mr. Pearson's counsel requested the letter be reduced to writing does not transform a disclosure into a non-disclosure. Counsel requested confirmation of oral assurances made during the meet-and-confer. The assurances themselves, and the disclosures underlying them, had already occurred. The letter is evidence of the violation, not its cause.

## V.    Rule 1.9(c) Independently Supports Disqualification.

Cline Williams argues that Rule 1.9(c) "does not prohibit representations, as Rule 1.9(b) does; it only prohibits misuse of information." (Doc. 157 at 18.) From this premise, Cline Williams concludes that Rule 1.9(c) cannot support disqualification. Although the premise is correct, the conclusion does not follow.

The remedy of disqualification follows from the nature and severity of the violation, not from which subsection of Rule 1.9 is implicated. Where a firm's continued representation creates a structural risk that confidences will be used adversely, and where lesser measures cannot eliminate that risk, disqualification is the appropriate remedy. Ms. Sapp has already disclosed categories of confidential information in writing and on the March 13 call. Using that information to structure a negotiation over deposition scope is itself an adverse use of information from the prior representation in violation of Rule 1.9(c). Disqualification is the only remedy that prevents further use.

The Rule is prophylactic: a risk of misuse of confidences is sufficient; no showing of actual misuse is required. *See Zerger & Mauer LLP,* 751 F.3d at 932. The structural risk here is not hypothetical. It is documented in Ms. Sapp's own letter.

## VI.  Mr. Pearson's Filing of the Letter Does Not Waive His Rights.

Cline Williams argues that Mr. Pearson "inflicted [harm] on himself by filing the letter his lawyers asked for." (Doc. 157 at 24.) This is Cline Williams' most forceful rhetorical point, but it lacks legal substance.

Mr. Pearson filed the letter in support of a motion for judicial relief from the very conduct the letter evidences. Filing evidence in support of a motion does not waive the underlying privilege or the right to protection. If Cline Williams' argument were correct, no former client could ever present evidence of a conflict to a court without forfeiting the confidences at stake. That is circular and self-defeating.

It also bears emphasis that Mr. Pearson initially filed the letter under seal. (Doc. 134.) It was Cline Williams that insisted the filing be made available to all counsel. (Doc. 152.) Cline Williams cannot engineer broader disclosure and then fault Mr. Pearson for it.

## VII.  Cline Williams' Authority Does Not Support Its Position.

Cline Williams' opposition brief relies on authority that, on examination, undermines rather than supports its arguments.

First, Cline Williams invokes *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2,* 197 F.3d 922 (8th Cir. 1999), for the proposition that nonparty status does not immunize a witness from discovery obligations. But the Eighth Circuit in that case affirmed quashing a nonparty subpoena, holding that

9

nonparties are entitled to "special protection" and that the burden on nonparties is a factor entitled to "special weight." *Id.* at 926-27. The case cuts directly against Cline Williams' position.

Second, to the extent Cline Williams cites *Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1986)*, for nonparty discovery principles, that case established the three-part test for deposing opposing counsel and involved attorney work-product protections. It does not address the obligations of nonparty fact witnesses under Rule 45.

Third, Cline Williams frames the disqualification standard around *Macheca Transp. Co.*, 463 F.3d 827 (8th Cir. 2006), arguing disqualification motions are viewed with "general disfavor." But *Macheca* is an Eighth Circuit case applying federal common law on disqualification. This Court sits in Nebraska and applies Nebraska's Rules of Professional Conduct. Nebraska law provides a more protective framework for former clients than federal common law. The irrebuttable presumption established in *Freezer Services*, *FirsTier Bank*, and *Creighton University* is more demanding than the general Eighth Circuit standard. To the extent there is tension between the two frameworks, Nebraska's rules govern the conduct of Nebraska-licensed attorneys.

## VIII. The Motions Were Procedurally Appropriate.

Cline Williams argues that Mr. Pearson should have contacted the Magistrate Judge before filing motions, consistent with the Court's Civil Case Management Practices. (Doc. 157 at 14-15.) This argument is unpersuasive for three reasons.

10

First, the Civil Case Management Practices encourage pre-filing contact with the Magistrate Judge for standard discovery disputes. These motions raise questions of attorney disqualification, professional conduct violations, and the structural integrity of the attorney-client privilege. Those are not disputes resolvable by a telephonic conference.

Second, Mr. Pearson did attempt to resolve these issues without court intervention. His counsel contacted Cline Williams on March 11, 2026, to request a meet and confer, followed by a second communication on March 12. Cline Williams attended a conference call on March 13 and proposed measures Mr. Pearson found inadequate; the parties were unable to reach agreement, requiring Mr. Pearson to seek court intervention.

Third, the deposition was noticed on an expedited basis. Mr. Pearson received the original subpoena on March 4, 2026, with the deposition set only nine days later. There was no agreement to stay or reschedule the deposition during the meet-and-confer process. The compressed timeline required prompt action.

These motions are also grounded in provisions that expressly contemplate judicial intervention without prior informal resolution. Rule 26(c)(1)(E) authorizes the Court to enter a protective order designating the persons who may be present while discovery is conducted. Rule 45(d)(1) authorizes the Court to impose sanctions, including attorney's fees, when the issuing party fails to take reasonable steps to avoid undue burden or expense on the subpoenaed person. Neither provision requires exhaustion of informal procedures before the Court may act.

**IX.    Plaintiff's Response Confirms the Need for Relief.**

Plaintiff Ashley Scoggin filed a response (Doc. 164) that supports Mr. Pearson's motions and provides additional factual context the Court should consider.

First, the Plaintiff establishes that the University Defendants have known for more than three years that Mr. Pearson was a potential witness. Mr. Pearson was interviewed by the University's Institutional Equity and Compliance office on April 27, 2022, during its investigation of Ms. Scoggin's Title IX complaint. (Doc. 164 at 3.) Yet Cline Williams accepted the Pearsons as clients through Ms. Sapp while this litigation was active, with knowledge that Mr. Pearson was a fact witness in matters involving the University. No evidence in the record establishes that a conflicts check was performed.

Second, the Plaintiff identifies that Defendant Chuck Love testified at his deposition, conducted at Cline Williams' offices, that he had "been here before." (Doc. 164 at 4.) When asked to elaborate, counsel asserted attorney-client privilege and instructed Mr. Love not to answer. This raises questions about undisclosed relationships between Cline Williams and the individual defendants that bear on the scope and nature of the firm's conflict.

Third, the Plaintiff's response underscores that Cline Williams' characterization of Mr. Pearson's February 21, 2022 radio broadcast is misleading. Cline Williams claims Mr. Pearson described receiving "a late-night call from Ms. Scoggin on the night of the Penn State incident." (Doc. 157 at 5.) The Plaintiff's evidence establishes that the call was from Ms. Scoggin's parents, not from Ms. Scoggin herself. (Doc. 164 at 2, citing Craig Scoggin Dep. at 41:19-43:01.) Accuracy

12

matters. Cline Williams' mischaracterization of the factual record is consistent with its broader pattern of minimizing the conflict and overstating its position.

## X.    Sanctions Are Warranted.

Cline Williams argues it has acted in good faith throughout. (Doc. 157 at 22-24.) The record does not support that characterization.

Cline Williams issued the original subpoena against its former client's household. After receiving explicit notice of the conflict, Ms. Sapp personally engaged with the substance of the conflict by speaking with Rebecca Pearson about the subpoena and the prior representation. Cline Williams then issued an amended subpoena six days later. On the March 13 meet-and-confer call, Ms. Sapp disclosed confidential information, proposed an inadequate proxy arrangement, and warned that seeking judicial protection would expose Mr. Pearson to examination by other attorneys on the very subjects Ms. Sapp agreed to avoid. Ms. Sapp's warning was designed to discourage a former client from seeking court relief. That is not good faith.

Cline Williams' reliance on *Burull v. First Nat. Bank of Minneapolis*, 831 F.2d 788 (8th Cir. 1987), is misplaced. *Burull* involved a denial of sanctions where the court could not conclude counsel "acted vexatiously or in bad faith." *Id.* at 790. Here, the timeline establishes knowing conduct: notice of the conflict, personal engagement with the conflict by the conflicted attorney, issuance of a new subpoena after notice, disclosure of confidential information on the meet-and-confer call, and a written warning designed to deter court intervention. The Court need not speculate about Cline Williams' intent. The sequence speaks for itself.

13

Rule 45(d)(1) imposes a mandatory duty to take reasonable steps to avoid undue burden, a duty Cline Williams did not meet. The costs incurred by Mr. Pearson are a direct result of that failure and should be awarded. Rule 45(d)(1) is the threshold basis for fee-shifting here, and it does not require proof of bad faith. It requires proof that the issuing party failed to take reasonable steps to avoid foreseeable burden and expense. Issuing a subpoena against a former client without a conflicts check, then insisting on the deposition through multiple rounds of motion practice, is not a reasonable step. The burden here is not the ordinary cost of compliance. It is the cost of defending against deposition by one's own former counsel.

Cline Williams presents Ms. Sapp's failure to recognize Mr. Pearson as a former client when she issued the subpoena as a mitigating fact. (Sapp Dec. ¶ 13.) It is not. A conflicts check is the mechanism that exists to prevent exactly this situation. It is not optional. The University Defendants have known since at least April 27, 2022 that Mr. Pearson was interviewed by the University's Institutional Equity and Compliance office as a potential fact witness. (Doc. 164 at 3.) Cline Williams nonetheless accepted the Pearsons as clients in May 2025 while this litigation was active and while Mr. Pearson's status as a potential witness was a matter of institutional record. No evidence shows a conflicts check was performed at either moment. Issuing a deposition subpoena against a former client without asking the threshold question — have we represented this person? — is reckless indifference to the obligations § 3-501.9 imposes. That is the standard under 28 U.S.C. § 1927.

Ms. Sapp's conduct on the March 13 meet-and-confer call was independently sanctionable. On that call, she warned Mr. Pearson's counsel that if Mr. Pearson sought judicial protection, other Cline Williams attorneys would learn the subjects she had agreed to avoid, thereby exposing him to examination on those very topics. That warning used the existence of Mr. Pearson's confidential subjects as leverage to deter him from exercising his right to seek court relief. Nebraska Rule § 3-501.9(c) prohibits a lawyer from using "information relating to the representation to the disadvantage of the former client." A lawyer who identifies a former client's sensitive subjects and then threatens to expose them unless the former client forgoes judicial protection has already violated that rule. The warning was not protective. It was coercive.

## XI. Cline Williams Is Poorly Positioned to Press Accuracy Objections.

Cline Williams is correct that Mr. Pearson cited the wrong docket number for the *Abarca* proposition. (Doc. 157 at 12.) The error is acknowledged. But Cline Williams is poorly positioned to press accuracy objections. Its governing-rule section header cites the applicable rule as "Neb. Ct. R. § 5-301.9" (Doc. 157 at 16), a citation that does not exist; the correct citation is § 3-501.9. And it is not only citations. Cline Williams represented to this Court that Mr. Pearson described receiving a late-night call from Ms. Scoggin on the night of the Penn State incident. (Doc. 157 at 5.) The Plaintiff's response establishes that the call came from Ms. Scoggin's parents, not

15

from Ms. Scoggin herself. (Doc. 164 at 2-3, citing Craig Scoggin Dep. 41:19-43:01.)[1] A case name error in a brief drafted in twenty-four hours under a nine-day deposition deadline is a typographical error. A misrepresentation of the evidentiary record in an opposition brief filed with deliberation is something else. Mr. Pearson's briefs hyperlinked to the correct case, and the proposition is unaffected.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Mr. Pearson's opening briefs, nonparty Derrick Pearson respectfully requests that this Court:

1. Quash the Amended Deposition Subpoena (Doc. 141);

2. Disqualify Cline Williams from continued representation of the University Defendants (Doc. 142);

3. Enter a Protective Order (Doc. 143);

4. Award sanctions, including reasonable attorney's fees and costs (Doc. 144); and

5. Grant such other and further relief as this Court deems just and proper.

---

[1] The discrepancy between Cline Williams' characterization and the deposition record was identified in the Plaintiff's response. Doc. 164 at 2–3 (citing Craig Scoggin Dep. 41:19–43:01). Mr. Pearson takes no position on the merits of Ms. Scoggin's claims.

16

DERRICK PEARSON, Nonparty,

_____
Thomas E. Horgan, #26980
Grace M. Wiseman, #28237
James W. Healey, #28450
HORGAN LAW, LLC
13304 West Center Rd, Ste. 109
Omaha, Nebraska 68144
contact@horganlawfirm.com
Attorney for Nonparty Derrick
Pearson

17

## CERTIFICATE OF COMPLIANCE

Pursuant to Nebraska Civil Rule 7.1(d)(1)(D), the undersigned certifies that the accompanying brief complies. According to the word count function of Microsoft Word, the word-processing software used in creation of this brief, the document contains 4,149 words, including the case caption, signature block, certificates of service, and compliance, as required by NECivR 7.1(d)(1)(A). Further, no portion of this document was drafted using generative artificial intelligence or, should generative artificial intelligence have been used in any portion in drafting this brief, the undersigned has reviewed and verified the accuracy of such content, including all citations and legal authorities, in accordance with NECivR 7.1(d)(2).

_____
Thomas E. Horgan, #26980

**CERTIFICATE OF SERVICE**

I hereby certify that on April 13, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of electronic filing to all counsel of record.

_____
Thomas E. Horgan, #26980