MARK A. CHRISTENSEN
RICHARD P. GARDEN, JR.
SUSAN K. SAPP
KEVIN J. SCHNEIDER
ROCHELLE A. MULLEN
TRENTEN P. BAUSCH
MICHAEL C. PALLESEN
RICHARD P. JEFFRIES
TRENT R. SIDDERS
ANDRE R. BARRY
DAVID J. ROUTH
JASON R. YUNGTUM
MEGAN S. WRIGHT
THERESA D. KOLLER
AUSTIN L. MCKILLIP
KEITH T. PETERS
ANDREW R. WILLIS
TARA A. STINGLEY
SEAN D. WHITE
MICHELLE L. SITORIUS
MICHAEL J. WHALEY
RUSSELL J. SPRAGUE
HENRY L. WIEDRICH
DANIEL W. OLDENBURG
ADAM W. BARNEY
JENNIE A. KUEHNER
TRAVIS W. TETTENBORN
BEAU B. BUMP
SHANNON E. FALLON
CRISTIN M. MCGARRY
KATIE A. JOSEPH
LILY AMARE
JOHN F. ZIMMER, V

# CLINE WILLIAMS
# WRIGHT JOHNSON & OLDFATHER, L.L.P.

ATTORNEYS AT LAW

ESTABLISHED 1857

233 SOUTH 13TH STREET
1900 U.S. BANK BUILDING
LINCOLN, NEBRASKA 68508-2095

(402) 474-6900

www.clinewilliams.com

NATHAN D. CLARK
ALISON JANECEK BORER
BRIAN P. MORRISSEY
SYDNEY M. HUSS
BRITTNEY M. HOLLEY
ISAIAH J. FROHLING
JESSICA K. ROBINSON
JEREMIAH J. PERKINS
NATHANIAL T. HEIMES
HARRISON J. KRATOCHVIL
EVAN D. RUNGE
KIMBERLY A. DUGGAN
LAUREN M. TAYLOR
KEVIN M. FREUDENBURG
STAVROS P. PIPERIS
ROGER D. SACK
MADELINE C. HASLEY
NICHOLAS J. ROCK

OF COUNSEL:

RENEE A. EVELAND
STEPHEN E. GEHRING
L. BRUCE WRIGHT (INACTIVE)
ROBERT J. ROUTH
SCOTT D. KELLY
JOHN C. MILES
THOMAS C. HUSTON
DON R. JANSSEN
GARY R. BATENHORST
DAVID O. COLVER†

†ATTORNEYS ADMITTED IN COLORADO ONLY

February 5, 2026

**<u>VIA EMAIL ONLY</u>**

Maren Lynn Chaloupka
mlc@chaloupkalaw.net

Nathan T. Bruner
nbruner@nebraskalawfirm.net

> **RE:** ***Scoggin v. Board of Regents of the University of Nebraska, et al.***
> **Case No.: 4:24-cv-3039**
> **Formal Objections to 30(b)(6) Topics**

Dear Maren and Nathan:

This letter serves as the Board of Regents of the University of Nebraska's ("BRUN") formal objections to Plaintiff's Rule 30(b)(6) deposition notices set forth in Doc Nos. 114 – 19, and to the topics identified in each individual notice (each, a "Topic," and collectively, the "Topics"). As explained in more detail below, the Topics identified are overbroad, unduly burdensome, unlimited in scope, lack particularity, seek irrelevant information, and do not constitute proper topics for a Rule 30(b)(6) deposition. In short, the Topics are facially noncompliant with FED. R. CIV. P. 30(b)(6).

### GENERAL APPLICABLE LAW

FED. R. CIV. P. 30(b)(6) governs the deposition of corporate representatives and requires a notice of deposition to "describe with reasonable particularity the matters for examination." Federal courts have consistently held that under Fed. R. Civ. P. 30(b)(6) "the requesting party must take care to designate, *with painstaking specificity*, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *E3 Biofuels, LLC v. Biothane, LLC*, No. 8:11CV44, 2013 WL 4400506, at \*2 (D. Neb. Aug. 15, 2013) (emphasis supplied). When a notice is overly broad or vague, it becomes impossible for the responding party to determine the limits of the inquiry or to prepare a knowledgeable witness. *Id.* "When the notice is overbroad, the responding party is unable to identify the outer limits of the areas of inquiry noticed and designating a representative in compliance with the deposition notice becomes impossible." *Id.*

12910 PIERCE STREET
SUITE 200
OMAHA, NE 68144-1105
(402) 397-1700

1207 M STREET
P.O. BOX 510
AURORA, NE 68818
(402) 694-6314

221 E. MOUNTAIN AVENUE
SUITE 240
FORT COLLINS, CO 80524
(970) 221-2637

131 W. EMERSON STREET
HOLYOKE, CO 80734
(970) 854-2264

*See also Kalis v. Colgate-Palmolive*, 231 F.3d 1049, 1057 n.5 (7th Cir. 2000); *Dennis v. United States*, No. 3:16-cv-3148-G-BN, 2017 WL 4778708, at *8 (N.D. Tex. Oct. 23, 2017); *Fish v. Air & Liquid Sys. Corp.*, 2017 WL 697663, at *20 (D. Md. Feb. 21, 2017); *Memory Integrity, LLC v. Intel Corp.*, 308 F.R.D. 656, 661 (D. Or. 2015); *Phoenix Ins. Co. v. Cantex, Inc.*, No. 13-cv-00507-REB-NYW, 2015 WL 1740334, at *2 (D. Colo. Apr. 2015); *In re Jemsek Clinic, P.A.*, Bankr. Nos. 06-31766, 06-31986, Adv. Pro. No. 07-3006, 2013 WL 3994666, at *5 (W.D.N.C. Aug. 2, 2013); *Whiting v. Hogan*, No. 12-CV-08039-PHX-GMS, 2013 WL 1047012, at *11 (D. Ariz. Mar. 14, 2013); *Mailhoit v. Home Depot U.S.A., Inc.*, No. CV 11-03892, 2012 WL 12884049, at *2 (C.D. Cal. Aug. 27, 2012); *Kelly v. Provident Life & Accident Ins. Co.*, No. 1:09-cv-00070-jgm, 2010 WL 5300807, at *2 (D. Vt. Dec. 20, 2010); *E.E.O.C. v. Thorman & Wright Corp.*, 243 F.R.D. 421, 426 (D. Kan. 2007); *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000); *Union Pac. R.R. Co. v. Mike's Train House, Inc.*, No. 8:05CV575, 2006 WL 8458361, at *6 (D. Neb. Aug. 10, 2006); *see also Sheehy v. Ridge Tool Co.*, No. 3:05-cv-1614, 2007 WL 1548976, at *4 (D. Conn. May 24, 2007) (while a simple notice pleading suffices to commence an action, it does not, in this case, satisfy the "reasonable particularity" standard of Rule 30(b)(6)); *SmithKline Beecham Corp. v. Apotex Corp.*, No. 98 C 3952, 2000 WL 116082, at *8–10 (N.D. Ill. Jan. 24, 2000) (refusing to require SmithKline's Rule 30(b)(6) deponent to testify about "SmithKline's responses to Defendants' Interrogatories and requests for production"); *Lipari v. U.S. Bancorp, N.A.*, No. 07-2146-CM-DJW, 2008 WL 4642618, at **4–7 (D. Kan. Oct. 16, 2008) ("Plaintiff is asking U.S. Bancorp to produce a representative to testify about every single allegation of conduct by U.S. Bancorp in the entire Petition and all documents relating to the conduct of its agents. This hardly meets the requirement that Plaintiff 'designate, with painstaking specificity, the particular subject areas' to be covered in the deposition."); *Murphy v. Kmart Corp.*, 255 F.R.D. 497, 506 (D.S.D. 2009) ("Mr. Murphy seeks information regarding (1) the corporate history of four corporate entities, (2) the corporate relationship between these entities, and (3) the bankruptcy of 2001. The court agrees with Kmart that this request covers a tremendous amount of information that may be completely irrelevant to Mr. Murphy's claims . . . Without further clarification, Kmart could not reasonably designate and properly prepare a corporate representative to testify on its behalf with respect to this broad line of inquiry.").

Further, liberal discovery rules "should not be misapplied so as to allow fishing expeditions in discovery," and thus "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992); *see also, Hartman v. Cty. of Lincoln, Nebraska*, No. 4:19CV3100, 2021 WL 3856129, at *2 (D. Neb. Aug. 27, 2021) (requiring a "threshold showing" of relevance); *Bachman v. Bachman*, No. 8:19CV276, 2021 WL 1788630, at *4 (D. Neb. May 5, 2021) (same). Finally, "[a] court can—and must—limit proposed discovery that it determines is not proportional to the needs of the case." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 742 (8th Cir. 2018).

## OBJECTIONS

BRUN objects to each of the Topics contained in Doc Nos. 114-19 in that they fail to meet the painstaking specificity required under Fed. R. Civ. P. 30(b)(6). In addition, BRUN objects to the Topics as follows:

**Doc. No. 114**: Person(s) most knowledgeable regarding Name, Image and Likeness opportunities for members of the Cornhusker women's basketball team in the years 2021 – 2024. This includes:

a. Identification of NIL sponsors for the years 2021-2024; and

b. The range of earnings by members of the Cornhusker women's basketball team in the years 2021-2024.

    **Response:** BRUN objects on the basis that this Topic seeks information that is statutorily protected from disclosure. Nebraska law expressly prohibits postsecondary institutions from disclosing "any information written, produced, collected, assembled, or maintained ... that includes or reveals any term of a contract or agreement or proposed contract or agreement for the use of a student-athlete's name, image, or likeness rights or athletic reputation." NEB. REV. STAT. § 48-3604(1). The request for the *identification of NIL sponsors* and the *range of earnings* for student-athletes from 2021–24 would necessarily reveal terms of such NIL contracts or agreements and is therefore barred from disclosure. Furthermore, the Topic does not seek relevant information and is not proportional to the needs of the case. To the extent Doc. No. 114 calls for the production or disclosure of identifiable student education records, BRUN further objects pursuant to the privacy obligations mandated by FERPA.

    For these reasons, BRUN objects to this Topic in its entirety.

**Doc No. 115:** Person(s) most knowledgeable in the drafting, editing, discussion and board approval of BRUN Policy 3.3.15 - "Consensual Relationships Policy."

    **Response:** BRUN objects on the basis of attorney–client privilege and work product to the extent this topic seeks privileged information. BRUN has already provided the effective date of Board of Regents Policy RP-3.3.15, which is June 25, 2021. The minutes from the meeting approving this policy are publicly available here: <u>Agendas and Minutes</u>.

    As previously explained, this policy was developed and approved through a multi-layered institutional process involving numerous individuals and offices over an extended period of time. Because the policy was already approved and in effect, the underlying drafting, editing, and deliberative processes are irrelevant, unduly burdensome to identify, and not proportional to the needs of the case. There is no reasonable basis for seeking this information in connection with Plaintiff's claims.

    For these reasons, BRUN objects to this Topic in its entirety.

**Doc. No. 116:** Person(s) most knowledgeable in the process for investigation, adjudication and disposition of reports of violations of any provision of "Disciplinary Action for Cause," found within Appendix C, University of Nebraska-Lincoln Department of Intercollegiate Athletics Policy on Standards of Professional Performance for Athletic Staff and Rules of Procedure for Disciplinary Action, for the years 2015-2025.

    **Response:** BRUN objects to this Topic as overly broad, irrelevant, unduly burdensome, and not proportional to the needs of the case. Plaintiff's claims concern alleged

sexual harassment only. Plaintiff also admits in her Complaint that she did not disclose the alleged conduct [which allegedly occurred from approximately September 2021 – mid-February 2022] until March 2022—at which point she reported it to the Office of Institutional Equity and Compliance. Defendant Love was suspended in mid-February 2022. Despite this narrow factual and temporal scope, the Topic seeks a Rule 30(b)(6) witness on the process for the investigation, adjudication, and disposition of ***any*** violation of the "Disciplinary Action for Cause" provisions in Appendix C of the UNL Department of Intercollegiate Athletics Policy, for a ten-year period (2015–25). This sweeps far beyond the issues presented in the pleadings and bears no reasonable relation to any claim or defense. It is therefore improper under Rules 26 and 30.

Appendix C itself demonstrates why this request is facially overbroad. Section 4 defines "cause" to include an extremely broad and diverse array of conduct that spans far beyond anything related to sexual harassment. The grounds include, but are not limited to:

- Neglect or inattention to duties, after written notice and a 90-day opportunity to improve;

- Material or repetitive violations of any athletic rule, University regulation, or state or federal law;

- Criminal convictions (other than minor traffic offenses);

- Fraud or dishonesty, including theft or destruction of University property or electronic data;

- Falsification or alteration of University, NCAA, or Conference records, including recruiting, academic, or compliance documents;

- Failure to respond accurately or fully to University, NCAA, or Conference inquiries relating to the athletics program;

- Coaching or instructing others to withhold or misrepresent information during such inquiries;

- Illegal gambling or betting, including condoning, participating in, or facilitating gambling activity;

- Providing information to gamblers, bettors, or bookmakers;

- Alcohol use to the extent it materially impairs job performance;

- Sale, use, or possession of narcotics, drugs, controlled substances, steroids, or similar items, when prohibited by law or athletic rules;

- Permitting or condoning drug use by students under circumstances prohibited by law or athletic rules;

- Failure to cooperate with the University's student-athlete drug testing program;

4

- Major or significant NCAA or Conference rules violations, including violations committed by others that the staff member permitted, encouraged, or failed to act to prevent;

- Failure to promptly report known violations of athletic rules or University regulations; and

- Failure to report accurately all sources and amounts of athletically related income.

These numerous and wide-ranging grounds for discipline are wholly unrelated to sexual harassment and span performance issues, NCAA compliance, criminal activity, substance use, gambling violations, documentation falsification, and other regulatory obligations unique to intercollegiate athletics. Compelling BRUN to produce a witness educated on *all* investigative, adjudicative, and dispositional processes applicable to this entire universe of unrelated conduct, over a decade, would be extraordinarily burdensome and impossible to prepare for "with reasonable particularity," as required by Rule 30(b)(6).

Because the Topic encompasses every form of "cause" listed in Appendix C, rather than the type of conduct actually at issue in this lawsuit, it is irrelevant, disproportionate to the needs of the case, and plainly an improper fishing expedition.

For these reasons, BRUN objects to this Topic in its entirety.

**Doc. No. 117:** Person(s) most knowledgeable in reports received of violations of any provision of "Disciplinary Action for Cause," found within Appendix C, University of Nebraska-Lincoln Department of Intercollegiate Athletics Policy on Standards of Professional Performance for Athletic Staff and Rules of Procedure for Disciplinary Action, for the years 2015-2025.

**Response:** BRUN objects to this Topic for the same reasons stated in response to Doc. No. 116. The request is overly broad, irrelevant, unduly burdensome, and not proportional to the needs of the case. Plaintiff's claims relate solely to alleged sexual harassment within a specific team environment. Yet this Topic seeks testimony regarding **all reports** received of **any** alleged violation of **any** provision of "Disciplinary Action for Cause" under Appendix C, over a ten-year period (2015–25).

As explained previously, Appendix C defines "cause" to include an extraordinarily broad range of conduct—spanning performance deficiencies, NCAA rules compliance, criminal offenses, gambling violations, falsification of records, substance use, failure to cooperate with investigations, income-reporting issues, and numerous other categories that have no connection to Plaintiff's claims. By requesting information about "reports received" of violations of **any** of these provisions, the Topic would encompass every type of allegation, referral, complaint, or compliance report—however minor, unrelated, or outside the scope of this case. Nor does the Topic identify what information the witness is expected to provide regarding the "reports received," leaving the scope of the testimony vague and undefined.

The overbreadth is compounded by the fact that the Topic is not limited to the sport, team, or program in which Plaintiff was involved. Instead, it reaches **across all sports and**

***all athletic staff*** within the Department of Intercollegiate Athletics, effectively seeking a decade's worth of reports from the entire Athletics Department, regardless of relevance.

This sweeping request bears no reasonable relationship to the sexual-harassment-only allegations at issue and would require BRUN to gather and educate a witness on an undefined universe of unrelated reports across multiple sports, staff, administrative levels, and regulatory contexts. Such an undertaking is unduly burdensome, disproportionate to the needs of the case, and cannot be satisfied with the reasonable particularity required by FED. R. CIV. P. 30(b)(6).

For these reasons, BRUN objects to this Topic in its entirety.

**Doc. No. 118:** For the years 2015-2025, the person most knowledgeable in reports received of employees of the University of Nebraska-Lincoln Department of Intercollegiate Athletics engaging in any of the following:
    a.  Sexual or "romantic" contact with any student-athlete;
    b.  Any conduct toward a student-athlete reported based on concerns that such conduct was in any other manner inappropriate; and
    c.  Any of the conduct defined in BRUN Policy 2.1.8(c) toward any person, regardless of whether a Title IX complaint was actually filed.

**Response:** BRUN objects to this Topic as overly broad, vague, burdensome, disproportionate to the needs of the case, and seeking information that is irrelevant to the claims and defenses in this action. The Topic, which spans a ten-year period (2015–25), sweeps in all reports—formal or informal—of a wide range of conduct involving any employee of the Department of Intercollegiate Athletics and any student-athlete or "any person," concerning (a) sexual or "romantic" contact, (b) any conduct deemed "inappropriate," and (c) any conduct described in BRUN Policy 2.1.8(c), regardless of whether a Title IX complaint was filed.

First, the Topic is not limited to conduct related to Plaintiff's sexual-harassment allegations and instead sweeps in consensual romantic relationships, subjective and undefined "inappropriate" behavior, and a broad array of conduct under Policy 2.1.8(c) involving any Athletics employee and any person. This bears no reasonable relationship to the issues in dispute.

Second, the Topic is not limited to coach–student-athlete relationships and would encompass all categories of Athletics employees, including student employees, graduate assistants, interns, temporary staff, and administrative personnel, many of whom cannot be relevant comparators or witnesses in this case.

Third, the Topic demands testimony on "reports received," but does not specify what information will be sought from the deponent. To the extent it is asking BRUN to identify and prepare a witness to testify about every component of each report, including: who made the report (which may include students, athletes, staff, third parties, or anonymous sources); the nature of the allegation, including allegations that are unverified, informal, speculative, or unrelated to sexual misconduct; when and how the report was received; whether the report was documented, where, and by whom; what actions, if any, were taken in response (intake, referrals, preliminary assessments, no further action, Title IX review,

HR involvement, administrative follow-up, coaching intervention, etc.); what personnel were involved in receiving or responding to the report; what policies applied at the time of the report; and the ultimate disposition, if any, is overly broad. Preparing a designee to testify on all of these aspects across a decade of unrelated reports (sexual or romantic contact OR inappropriate conduct) and spread across all sports, all coaching staffs, and all Athletics programs—would be extraordinarily burdensome. Such request fails to satisfy the reasonable particularity required under Rule 30(b)(6).

Fourth, the Topic is vague and ambiguous, including in its reference to "romantic" contact, "inappropriate" conduct, and conduct defined in Policy 2.1.8(c). The Topic does not identify what constitutes a "report," who must have received it, whether it must have been documented, or what level of specificity is required. Nor does it identify which office, administrator, or system (e.g., Athletics, HR, OIEC, Title IX, compliance, student conduct) is implicated, making preparation of a knowledgeable Rule 30(b)(6) witness impossible. It also fails to identify "inappropriate" conduct.

Fifth, the Topic likely seeks highly sensitive and confidential information about student-athletes, employees, witnesses, and complainant. Even if such information were marginally relevant (it is not), the breadth of the request would require disclosure of extensive personnel, student, and Title IX-related information protected by federal law, state law, including FERPA.

Finally, because the Topic encompasses a decade of unrelated allegations involving different employees, different sports, different supervising units, different policies, and different investigative frameworks, the burden of identifying, gathering, reviewing, and preparing a witness on this expansive range of subject matter is grossly disproportionate to any conceivable value, and cannot be satisfied with the reasonable particularity demanded by Fed. R. Civ. P. 30(b)(6).

For these reasons, BRUN objects to the Topic in its entirety.

**Doc. No. 119:** For the years 2015-2025, the person most knowledgeable in the process and procedures of ad hoc, quasi-judicial hearings for student-athletes, as adjudicated by teammates and coaches of their team.

**Response:** BRUN objects to this Topic as vague, ambiguous, overly broad, irrelevant, and not proportional to the needs of the case. The Topic, as drafted, is unintelligible and therefore fails to satisfy the reasonable particularity required by FED. R. CIV. P. 30(b)(6).

The Topic refers to "ad hoc, quasi-judicial hearings for student-athletes," but does not identify what type of "hearing," what underlying subject matter, what policies or rules govern such proceedings, or in what circumstances such hearings are convened. BRUN is not aware of any formal or informal "quasi-judicial hearings" adjudicated by "teammates and coaches," and the Topic provides no definition that would enable BRUN to identify what process is being sought. The Topic is also not limited to Women's Basketball team. Also, the reference to hearings "adjudicated by teammates and coaches of their team" is unclear. Without identifying what alleged adjudicatory body, procedure, or policy this refers to, BRUN cannot identify the "process and procedures" demanded. Because the Topic is internally inconsistent, undefined, and unmoored from any known University policy or process, it is

impossible for BRUN to determine what information is being sought or to prepare a knowledgeable representative. The Topic appears unrelated to this case and seeks testimony on matters that are irrelevant, speculative, and outside the scope of the litigation.

For these reasons, BRUN objects to it in its entirety.

In the hope of resolving these issues, we will send a compromise letter by Monday, February 9, 2026.

Sincerely,

Lily Amare
For the Firm

cc:     Susan Sapp
        Bren Chambers
        Jaclyn Klintoe
        Denise Frost

4919-2228-5709, v. 1

8