IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ASHLEY SCOGGIN,<br><br>Plaintiff,<br><br>v.<br><br>BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA and individuals AMY WILLIAMS, TREV ALBERTS, and CHUCK LOVE, JR., in their individual capacities,<br><br>Defendants. | Case No. 4:24-cv-3039<br><br>DEFENDANT LOVE'S BRIEF SUPPORTING MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF |

Pursuant to F.R.Civ.P. 56, NECivR 56.1(a) and 7.1, Defendant Chuck Love, Jr. has moved the Court for summary judgment in his favor against Plaintiff Ashley Scoggin on all of Plaintiff's damages claims asserted under 42 U.S.C. §1983 and Title IX, 20 U.S.C. §§ 1681 *et seq.* There is no genuine issue of material fact and Love is entitled to judgment in his favor as a matter of law.

Defendant Love has, in separate pleading, adopted and joined in the summary judgment motion, brief, statement of undisputed facts, index of evidence and supporting evidentiary materials filed by Codefendants Board of Regents of the University of Nebraska, Amy Williams and Trev Alberts.

Defendant Love offers this supplemental brief specific to Plaintiff's claims against Love individually.

## I. STANDARDS OF REVIEW AND PROPOSITIONS OF LAW

Summary judgment under F.R.Civ.P. 56 is appropriate where evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). Once the moving party has identified the basis for its motion and those portions of the record that show lack of a genuine issue, the nonmoving party must demonstrate specific facts that create a genuine issue for trial "on more than mere speculation, conjecture, or fantasy." *Mosley v. City of Northwoods*, 415 F.3d 908 (8th Cir. 2005).

Qualified immunity protects a government official from liability in a §1983 action unless the official's conduct violated a clearly established constitutional or statutory right. *Henderson v. Munn,* 439 F.3d 497 (8th Cir.2006). Qualified immunity balances the need to hold state actors accountable for irresponsible exercises of power, and the need to shield them from liability and harassment when they have reasonably performed their duties. *Pearson v. Callahan*, 555 U.S. 223 (2009). Qualified immunity is immunity from suit, not just a mere defense to liability. *Briscoe v. St. Louis County,* 172 F.4th 996 (8th Cir. 2026). Like absolute immunity, qualified immunity from a civil rights action is effectively lost if a case is erroneously permitted to go to trial. *Saucier v. Katz,* 533 U.S. 194 (2001).

A defendant is entitled to qualified immunity unless 1) the facts, viewed in the light most favorable to the plaintiff, demonstrate deprivation of a constitutional right; and 2) the right was clearly established at the time of deprivation. *Haro v.*

*Brown,* 813 F. Supp. 3d 913 (W.D. Ark. 2025); *Howard v. Kansas City Police Dept.*, 570 F.3d 984, 988 (8th Cir. 2009). Judges have discretion to decide which prong of the qualified immunity analysis to address first. *Pearson v. Callahan,* 555 U.S. 223 (2009).

The party asserting qualified immunity has the burden of establishing relevant predicate facts and the nonmoving party is given the benefit of all reasonable inferences. *McGuire v. Cooper,* 952 F.3d 918 (8th Cir. 2020). Then, to overcome a qualified immunity defense the plaintiff must show facts, viewed in the light most favorable to her, demonstrating deprivation of a constitutional right, and that the right was clearly established at the time of the alleged deprivation. "Clearly established" means a legal principle is settled law with a clear foundation in then-existing precedent. The clearly established standard requires that the legal principle clearly prohibits the government actor's conduct *in the particular circumstances* before him. This requires a high degree of specificity. *District of Columbia v. Wesby*, 583 U.S. 48, 63(2018) (emphasis supplied).

To demonstrate clear establishment of a constitutional right, a plaintiff must 1) point to existing circuit precedent that involves sufficiently similar facts that squarely govern the government actor's actions such that the actor had notice his conduct was unlawful; or 2) present a robust consensus of cases of persuasive authority doing the same; or 3) demonstrate that a general constitutional rule applied with obvious clarity to the facts at issue. *Boudoin v. Harsson*, 962 F.3d

1034, 1039-1040 (8th Cir. 2020). Government actors "are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Id.*

Courts do not define clearly established law at high levels of generality, because doing so would avoid the crucial question whether the official acted reasonably *in the particular circumstances* he faced. A rule is too general and not "clearly established" if the unlawfulness of the actor's conduct does not follow *immediately* from the conclusion that the rule was firmly established. *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).

A defendant cannot be held liable under § 1983 under a theory of respondeat superior. *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011). Section 1983 liability is personal in nature and requires direct involvement in the alleged constitutional violation. *Marsh v. Phelps County*, 902 F.3d 745, 754 (8th Cir. 2018).

Where a particular constitutional amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, and not a general "due process" claim, guides analysis of the claim. *County of Sacramento v. Lewis,* 523 U.S. 833, 842 (1998). U.S. Const. Amend. XIV prohibits state governments from depriving "any person of life, liberty, or property, without due process of law. A claimed due process violation may be procedural or substantive. *Creason v. City of Washington*, 435 F.3d 820, 824 (8th Cir. 2006). Elements of a *procedural* due process violation are: 1) a protected life, liberty, or property interest; 2) deprivation of the same; and 3) the state's failure to provide adequate procedural rights before impinging upon the protected interest.

*Mulvenon v. Greenwood*, 643 F.3d 653, 657 (8th Cir. 2011). Elements of a *substantive* due process violation are: 1) violation of a constitutional right; and 2) that the state actor's conduct in violating the right is "shocking to the contemporary conscience." *Flowers v. City of Minneapolis, Minn.*, 478 F.3d 869, 873 (8th Cir. 2007). Substantive due process rights are created only by the Constitution. Analysis of either due process component begins with examining the interest allegedly violated. Possession of a protected life, liberty, or property interest is a condition precedent to any due process claim. *Id.*

Depending on a case's particular facts, a plaintiff may have a right under the Fourteenth Amendment to protection of her liberty interest in personal privacy and bodily integrity. *Doe A v. Special School Dist. of St. Louis County,* 637 F. Supp. 1138, 1144 (8th Cir. 1986). A due process right to bodily integrity has been recognized against *non-consensual* intrusion into one's body, or egregious unconsented-to sexual contact. *Rogers v. City of Little Rock, Ark.,* 152 F.3d 790, 795 (8th Cir. 1998). *Haberthur v. City of Raymore, Missouri*, 119 F.3d 720, 723 (8th Cir. 1997).

Nonconsensual conduct *intended* to injure a plaintiff in some way unjustifiable by any government interest is likely to be "shocking to the contemporary conscience." *Arentsen v. Nebraska,* No. 4:23CV3131, 2025 WL 2770657 at *7 (D. Neb. 2025)(Gerrard, J.) Conversely, reckless, negligent and even grossly negligent acts are not conscience-shocking events, for purposes of a bodily

integrity constitutional analysis. *S.S. v. McMullen*, 225 F.3d 960, 964 (8th Cir. 2000).

Whether conduct shocks the conscience is a question of law. *Folkerts v. City of Waverly, Iowa*, 707 F.3d 975, 980 (8th Cir. 2013) . "[N]ot every inappropriate or unwanted touching by a public official ... can amount to the '*brutal and inhumane* abuse of official power' necessary to demonstrate a violation of an individual's bodily integrity sufficient to support a constitutional violation." *Hawkins v. Holloway,* 316 F.3d 777 (8th Cir.2003) (emphasis supplied). Conduct "that shocks in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an *exact* analysis of circumstances before any abuse of power is condemned as conscience shocking." *Putnam v. Keller,* 332 F.3d 541, 548 (8th Cir. 2003) (emphasis supplied).

Consensual sexual contact is not considered "shocking to the contemporary conscience". *Villanueva v. City of Scottsbluff,* 2014 WL 840634, at *13-14 (D. Neb. 2014) (Kopf, J.) , *aff'd* 779 F.3d 507 (8th Cir. 2015); *Doe v. Est. of Eckerson,* 2024 WL 2955046 (8th Cir. 2024). Accord, *Decker v. Tinnel,* 2005 WL 3501705, at *7 (N.D. Ind. 2005).

Many harms, even if caused in any respect by a state actor, simply are not within the scope of § 1983, "for section 1983 does not turn the Fourteenth Amendment into a font of tort law that supersedes the tort systems already

available under individual state laws." *Reeve v. Oliver,* 41 F.3d 381, 383 (8th Cir.1994).

The Eighth Circuit Court of Appeals and the U.S. Supreme Court do not recognize a constitutionally protected interest in a student athlete's continued participation in intercollegiate athletics. *Does 1-2 v. Regents of the Univ. of Minnesota*, 999 F.3d 571 (8th Cir. 2021). Uncertain or conjectural future economic opportunities are also not constitutionally protected rights. *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972).

Mere reputational injury, in and of itself, does not implicate constitutional due process protections. *Paul v. Davis,* 424 U.S. 693, 701, 711 (1976). If state action damages a plaintiff's reputation *and* distinctly altered or extinguished a right or status previously recognized by law, the "stigma plus" analysis requires the plaintiff to plausibly show 1) a stigmatizing public statement, and 2) alteration of her previously recognized legal status. *Kroupa v. Nielsen,* 731 F.3d 813 (8th Cir. 2013). Without evidence proving all elements, the claim fails. *Doe v. Blake School*, 310 F. Supp. 3d 969, 984 (D. Minn. 2018).

## II. FACTUAL SUMMARY

Love has adopted and joined in the Statement of Undisputed Material Facts ("SUMF"), Index and Evidence In Support of Defendants' Motion for Summary Judgment and the Brief filed by Codefendants Board of Regents of the University of Nebraska (BRUN), Amy Williams and Trev Alberts. The SUMF is annotated with citations to evidence supporting each fact.

## III. NATURE OF THE CASE

Love was an associate head coach of the University of Nebraska (NU) Cornhuskers women's basketball team under head coach Amy Williams. Terms of his employment were defined by contract and Love was also bound by BRUN policies discouraging sexual and romantic contact between NU staff/employees and students. Prior to 2021, Love had never had sexual contact with any student athlete. Love was 35 years old.

In August, 2020 Plaintiff moved to Lincoln from Salt Lake City, Utah, where she had been on a college basketball team. Plaintiff was 23 years old. She accepted a scholarship and position on the NU women's basketball team. She was bound by NU's student and athlete polices discouraging sexual contact with NU staff/faculty, and the basketball team's own rules requiring honesty and teamwork. Plaintiff and Love encountered each other frequently. However, Love did not grade Plaintiff's performance athletically or academically.

Plaintiff and Love engaged in a consensual sexual relationship from September, 2021 – February, 2022. They told no one about it. Love did not make, imply or impose threats, retaliation or adverse consequences on Plaintiff in order to have sexual contact with her. Plaintiff never told Love "no" to sexual contact or refused to engage with him.

The sexual relationship between Plaintiff and Love was discovered on February 16, 2022 while the basketball team was in Pennsylvania. As soon as she learned about it, Williams called a meeting of players and coaches. Williams

disallowed Plaintiff from playing in the Penn State game and barred Love from attendance. After they returned to Lincoln Love's employment was immediately suspended and he was ultimately terminated.

Plaintiff met with Williams and other NU athletic department personnel without any involvement by Love. Plaintiff was removed from the Husker women's basketball team but she retained all other benefits of her scholarship. After graduating from NU Plaintiff received another "full ride" basketball scholarship to University of Nevada-Las Vegas, playing and graduating with a master's degree.

Plaintiff concedes that Love was not involved in NU's decision removing her from the Husker women's basketball team. Plaintiff nevertheless sued Love for damages under 42 U.S.C. § 1983 and Title IX. Love has moved for summary judgment in his favor on all of Plaintiff's claims.

## IV. ANALYSIS AND ARGUMENT

### A. Love is entitled to summary judgment on Plaintiff's claim under 42 U.S.C. § 1983.

Plaintiff's complaint alleges:

¶76. "Love deprived Ashley, while acting under color of law of the rights, of the privileges and immunities secured by the Constitution, including the right to be free from intrusion to her bodily integrity. Love's actions were so extreme and egregious as to shock the conscience."

¶77. "Williams, Alberts and Love intentionally, willfully and without justification deprived Ashley of her rights, privileges and immunities secured

to her by the Constitution and laws of the US, including but not limited to due process and to be free from sexual abuse as provided by the 14th Amendment and her right to privacy and to be free from violations of bodily integrity as protected by the 4th, 5th, 9th and 14th Amendments, in violation of 42 USC 1983.".

¶78. "As a direct and proximate result of such deprivation, ASHLEY [sic] suffered invasion of her bodily integrity and physical injury, and suffered and continues to suffer indignity, humiliation, severe emotional distress and mental anguish."

(Filing #1)

This Court's initial task is to analyze what this claim actually is, and what it is not. Plaintiff's assertion of constitutionally protected rights of "bodily integrity" and "to be free from sexual abuse" under "the 4th, 5th, 9th and 14th Amendments" to the U.S. Constitution is grossly overbroad and inaccurate. Where a particular constitutional amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, and not a general "due process" claim, guides analysis of the claim. *County of Sacramento v. Lewis,* 523 U.S. 833, 842 (1998).

Plaintiff has no Fourth Amendment damages claim against Love. "The Fourth Amendment covers only 'searches and seizures,' neither of which took place here." *Id.* at 843. Plaintiff's 9th Amendment claim fares no better. "The Ninth Amendment does not create substantive rights beyond those conferred by governing

law." *Thomas v. Norris Sch. Dist. 160,* No. 8:22CV179, 2022 WL 20668245, at *4 (D. Neb. Nov. 23, 2022), quoting with approval *Gaslin v. Fassler*, 377 F. App'x 579, 580 (8th Cir. 2010) (unpublished per curium) and *Martinez-Rivera v. Sanchez Ramos*, 498 F.3d 3, 9 (1st Cir. 2007).

Plaintiff's claim therefore depends on proving a violation of her Fifth or Fourteenth Amendment rights. While both amendments broadly address due process rights, "the Fifth Amendment applies only to the federal government or federal actions and does not apply to state and municipality actors[.]" *Jackson v. Stair,* 944 F.3d 704, 709 (8th Cir. 2019). No defendant in this case, including Love, worked for or acted on behalf of the federal government in the events alleged in Plaintiff's complaint. So, Plaintiff's Fifth Amendment claim fails.

Plaintiff's sole possible claim regarding "invasion of her bodily integrity and physical injury" and "to be free from sexual abuse" must be analyzed under the Fourteenth Amendment. Alleged due process violations may be procedural or substantive. *Creason v. City of Washington*, 435 F.3d 820, 824 (8th Cir. 2006). Plaintiff's complaint does not specify upon which theory she relies. Elements of a *procedural* due process violation are: 1) a protected life, liberty, or property interest; 2) deprivation of the same; and 3) the state's failure to provide adequate procedural rights before impinging upon the protected interest. *Mulvenon v. Greenwood*, 643 F.3d 653, 657 (8th Cir. 2011). Elements of a *substantive* due process violation are: 1) violation of a constitutional right; and 2) the state actor's conduct in violating the

right "was shocking to the contemporary conscience." *Flowers v. City of Minneapolis, Minn.*, 478 F.3d 869, 873 (8th Cir. 2007).

Conduct *intended* to injure in some way unjustifiable by any government interest is likely to be conscience shocking. *Arentsen v. Nebraska,* 2025 WL 2770657, at *7 (D. Neb. 2025, Gerrard, J.) Conversely, negligent, reckless, and even grossly negligent acts do not, as a constitutional matter, suffice. *S.S. v. McMullen*, 225 F.3d 960, 964 (8th Cir. 2000). Conduct "that shocks in one environment may not be so patently egregious in another, and [courts'] concern with preserving the constitutional proportions of substantive due process demands an *exact* analysis of circumstances before any abuse of power is condemned as conscience shocking." *Putnam v. Keller,* 332 F.3d 541, 548 (8th Cir. 2003) (emphasis supplied).

A due process right to bodily integrity was recognized against *non-consensual* intrusion into one's body, or egregious unconsented-to sexual contact in *Rogers v. City of Little Rock, Ark.,* 152 F.3d 790, 795 (8th Cir. 1998) and *Haberthur v. City of Raymore, Missouri*, 119 F.3d 720, 723 (8th Cir. 1997). In both cases, the plaintiffs did not consent to sexual touching by a government actor. However, in this case the undisputed evidence is exactly opposite. Plaintiff initiated and affirmatively engaged Love in sexually charged conversations including *inter alia* losing her own virginity, going to "second base" on dates with male athletes, and Love's own sexual history. (SUMF ¶ 303-306) Plaintiff created provocative nude and semi-nude photos of herself and sent them to Love on Snapchat, a social media platform with which she was well acquainted. (SUMF ¶ 306-309, 322) Plaintiff's and Love's

consensual sexual contact included kissing, mutual manual stimulation, and fellatio performed on Love by Plaintiff. (SUMF ¶ 307-308) Plaintiff and Love had consensual sexual contact in a car at the Speedway parking lot in Lincoln, after hours in Love's office and in a locker room at the NU athletic complex, at Love's home, and in hotel rooms when the Husker women travelled out of state for away games. (SUMF ¶ 322)

Plaintiff was 23 and Love was 35 during the period at issue in this case. Plaintiff was firmly in control of her own sexuality, as her counseling records from that period show. Beginning February 15, 2021, Plaintiff attended counseling with NU psychologist Dr. Brett Woods, exploring issues relevant to mental aspects of her athletic performance, as well as personal issues including her romantic relationships and sex life. Plaintiff discussed present and past relationships, including ending her relationship with her then-boyfriend. Plaintiff's therapy records show she felt empowered to assert her needs and identify what she wanted in a future partner. Records from July, 2021 noted Plaintiff's discussion of her sexual health history and its impact on relationships romantic and platonic. Plaintiffs' last therapy appointment at NU was December 10, 2021. Plaintiff never reported sexual abuse by Love to NU's counseling staff. To the contrary, Plaintiff reported that she spoke with her coaches about her fears and she "felt understood by coaching staff." (SUMF ¶ 176-181)

Plaintiff and Love did not seek a permanent relationship with each other. They engaged in sexual contact because both wanted to do so. (SUMF ¶ 312, 322)

Plaintiff never told Love "no" to sexual contact or refused to engage in it with him. Plaintiff never told Love that she was uncomfortable with things he said or questions he asked. (SUMF ¶ 310, 316) Plaintiff produced no evidence that she was incapable of consenting to sexual contact with Love. To the contrary, Plaintiff knew and demonstrated she could say "no" when she wanted. Plaintiff testified that she refused to expand the sexual encounters to include a third person, refused to drink and drive or provide alcohol in meetings with him, and refused to say that her sexual interactions with Love were motivated by her mental health issues. (SUMF ¶ 307, 311, 321) There is no evidence that Plaintiff was, for any reason, incapable of rejecting sexual contact with Love if that was her wish. Compare *Reavis v. Slominski,* 250 Neb. 711, 551 N.W.2d 528 (1996) (therapist testified that plaintiff's childhood sexual abuse rendered her unable to advocate for herself in adult sexual experiences).

All parties agree that Love never used or threatened force against Plaintiff, and there is no evidence that he threatened or imposed adverse consequences on Plaintiff regardless of whether they engaged in sexual contact. (SUMF ¶ 159, 301-302) Love did not control Plaintiff's scholarship, playing time, grades, or status on the Husker basketball team. (SUMF ¶ 110) Love did not tell or imply to Plaintiff that she had to have sexual contact with him for any reason, including her continued participation in the Husker women's basketball program. (SUMF ¶ 315, 317-318)

Of note, Plaintiff does not claim that Love was involved in any way in the events that occurred after she was discovered in Love's hotel room on the Penn State game trip. (SUMF ¶ 245-246, 293) Love did not call the team meeting. Love made no untoward, derogatory or incriminating comment about Plaintiff. (SUMF 202-203, 293) He did not discipline, suspend or dismiss Plaintiff from the basketball team. (SUMF ¶ 245-246, 293) This Court has already determined as much. ("Here, the complaint does not allege, nor does it credibly suggest, that Love had authority over or participated in the decision to suspend or remove Plaintiff from the team. On the contrary, Plaintiff alleges that Love himself was suspended once the relevant information came to light." (Findings and Recommendation and Order, Filing #132) This is now the law of this case. *United States v. Bartsh*, 69 F.3d 864, 866 (8th Cir.1995) ("The law of the case doctrine prevents the relitigation of a settled issue in a case and requires courts to adhere to decisions made in earlier proceedings in order to ensure uniformity of decisions, protect the expectations of the parties, and promote judicial economy.").

Engaging in consensual sexual contact was admittedly a bad decision by both Love and Plaintiff. But that bad decision was not an *unconstitutional* decision. Qualified immunity protects a government official from liability in a 1983 action unless the official's conduct violated a clearly established constitutional or statutory right. *Henderson v. Munn,* 439 F.3d 497 (8th Cir.2006) A defendant is entitled to qualified immunity unless 1) the facts, viewed in the light most favorable to the plaintiff, demonstrate deprivation of a constitutional right; and 2) the right was

clearly established at the time of deprivation. *Haro v. Brown,* 813 F. Supp. 3d 913 (W.D. Ark. 2025); *Howard v. Kansas City Police Dept.*, 570 F.3d 984, 988 (8th Cir. 2009). To overcome a qualified immunity defense, Plaintiff must show facts, viewed in the light most favorable to her, demonstrating deprivation of a constitutional right, and that the right was clearly established at the time of the alleged deprivation.

"Clearly established" means that a legal principle must be settled law with a sufficiently clear foundation in then-existing precedent that clearly prohibits the officer's conduct *in the particular circumstances* before him. The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful *in the situation* he confronted. This requires a high degree of specificity. *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). Courts do not define clearly established law at a high level of generality; the crucial question is whether the state actor acted reasonably in the particular circumstances that he faced. A rule is too general if the unlawfulness of the officer's conduct does not follow *immediately* from the conclusion that the rule was firmly established. *Id.* For a plaintiff to overcome qualified immunity, existing precedent must have placed the constitutional question "beyond debate." *City & County of San Francisco, Calif. v. Sheehan,* 135 S.Ct. 1765 (2015); *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018).

The immutable fatal flaws in Plaintiff's claims against Love is that her sexual contact with him was consensual, and then-existing case law clearly established (with good reason) that consensual sexual contact is not considered

"shocking to the contemporary conscience" and therefore, not unconstitutional. *Villanueva v. City of Scottsbluff,* 2014 WL 840634, at *13-14 (D. Neb. 2014) (Kopf, J.) , *aff'd* 779 F.3d 507 (8th Cir. 2015). This was and continues to be the law in the 8th Circuit. *Doe v. Est. of Eckerson,* 2024 WL 2955046, at *2 (8th Cir. 2024) (no conscience-shocking disregard of plaintiff's constitutional rights where defendant's relationship with plaintiff was "consensual sexual relationship between adults"). Accor**d,** *Decker v. Tinnel,* 2005 WL 3501705, at *7 (N.D. Ind. 2005).

Assuming *arguendo* that Love was a government actor for purposes of Plaintiff's claim, a determination of whether conduct "shocks the conscience" is necessarily fact-specific and unique to the circumstances in which the conduct occurred, *Buenting v. Riley,* 2005 WL 1168361, at *15 (N.D. Iowa 2005). The terms of Love's employment with NU prohibited sexual contact with Plaintiff, but it is abundantly clear that Plaintiff, a mature adult, gave Love every indication that her sexual contact him was voluntary and desired. On facts Plaintiff admits are true, Love could not have reasonably perceived Plaintiff's participation was anything other than consensual.

In § 1983 actions, government actors "are not liable for bad guesses in gray areas." *Anderson v. City of Duluth et al,* 2026 WL 2137898, at *2 (D. Minn. July 24, 2026). Even if Plaintiff now thinks Love was "offensive and despicable, and certainly inexcusable", *Hawkins v. Holloway,* 316 F.3d 777, 784–85 (8th Cir. 2003), "unprofessional" or "immoral or dishonorable,", *Arentsen v. Nebraska,* No. 4:23CV3131, 2025 WL 2770657, at *7 (D. Neb. Sept. 29, 2025), or "improper and

reprehensible", *Decker v. Tinnel,* No. 2:04-CV-227, 2005 WL 3501705, at *9 (N.D. Ind. 2005), that does not rise to the level of *unconstitutional.* Certainly, the consensual sexual contact did not "amount to the 'brutal and inhumane abuse of official power' necessary to demonstrate a violation of an individual's bodily integrity sufficient to support a constitutional violation." *Hawkins v. Holloway, supra.*

While the sexual contact between Plaintiff and Love was ill-advised, it was not unconstitutional. Bodily integrity protected by the Fourteenth Amendment is not infringed by a participant's after-the-fact regrets about an affair. "The qualification is important. Because any offensive touching (*unless consented to, which removes the offense)* is a battery, most batteries are too trivial to amount to deprivations of liberty. *Decker v. Tinnel, supra* (emphasis supplied). See also, *Villanueva v. City of Scottsbluff,* 2014 WL 840634 (2014 (D. Neb. 2014, Kopf, J.) (plaintiff's consent to sexual contact voluntary and therefore, not unconstitutional); *Trautvetter v. Quick,* 916 F.2d 1140, 1152 (7th Cir. 1990) ("if, as a purely personal matter, a supervisor and a particular employee do find each other sexually attractive, it would not be sexually discriminatory under the equal protection clause for the two to engage in sexual activity"); *Hespe v. City of Chicago,* 307 F. Supp. 3d 874, 886 (N.D. Ill. 2018) ("if this distinction—subtle as it is—is not maintained, any consensual romance involving a state supervisor and employee which soured for one reason or another could give rise to equal protection claims if the employee simply

alleges that his or her supervisor's conduct during the term of the romance constituted 'sexual harassment'").

Plaintiff's sexual contact with Love falls into the category of misconduct for which no federal constitutional remedy is available. *Collins v. City of Harker Heights,* 503 U.S. 115, 128 (1992) (due process clause does not supplant state tort law); *Askew v. Millerd,* 191 F.3d 953, 958 (8th Cir.1999) ( § 1983 does not provide a remedy for every assault or battery that violates state law). Plaintiff never said no to that contact, although her own statements and counseling records clearly show she could have if she wished. This simply does not amount to the "brutal and inhumane abuse of official power" necessary to demonstrate violation of bodily integrity sufficient to support a constitutional violation. *Hawkins v. Holloway, supra*. It may be "a sad commentary on the state of our society", but allegations like Plaintiff's are "commonplace . . . and they simply do not amount to behavior that the Constitution prohibits under the rubric of contemporary conscience shocking substantive due process. State tort law is, instead, a proper source of any remedy." *Id.*

Federal constitutional remedies under 42 U.S.C. § 1983 are not – and were never meant to be - as broad as those available under common or statutory state law. Even if a plaintiff may seek damages under state law for unwanted touching under negligence or other theories, federal remedies under § 1983 are directed only against *egregious* conduct. *Burton v. Livingston,* 791 F.2d 97, 99 (8th Cir. 1986) "Many harms, though caused by a state actor, do not fall within the scope of section

1983, for section 1983 does not turn the Fourteenth Amendment into a font of tort law that supersedes the tort systems already available under individual state laws." *Reeve v. Oliver,* 41 F.3d 381, 383 (8th Cir.1994).

While Plaintiff's complaint alleges that Love and the Codefendants "acted under color of state law" (Filing #1, ¶3), merely alleging a federal constitutional interest against state actors does not convert state law claims into a § 1983 civil rights action. *Arentsen v. Nebraska*, 2025 WL 2770657, at *8 (D. Neb. 2025). Plaintiff did not plead any pendant state law claims in her complaint. She allowed them to lapse, and § 1983 jurisdiction does not replace or revive expired state law claims. *Hoffman v. Correct Care Solutions., Inc.,,* 2020 WL 6581422, at *1 (D. Neb. 2020) (Rossiter, J.) See also *McSwine v. Nebraska Dep't of Corr. Servs.,* 2022 WL 267294, at *4 (D. Neb. 2022) (Kopf, J.) (state does not consent to federal court jurisdiction merely by consenting to suit in its own courts).

Not every action undertaken by a person "who happens to be employed by the state is thereby 'under color of state law'" for purposes of a civil rights damages claim. *Jones v. Clinton,* 974 F. Supp. 712, 721 (E.D. Ark. 1997), citing with approval *Mark v. Borough of Hatboro,* 51 F.3d 1137, 1150 (3rd Cir.) (an otherwise private tort is not "under color of state law" simply because actor is an employee of the state). "[T]there is nevertheless no § 1983 liability if the challenged conduct is not related in some meaningful way either to the defendant's governmental status or to the performance of his or her duties." *Jones, supra.* A public employee acts under color of law when he "exercise[s] power possessed by virtue of state law and

made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins,* 487 U.S. 42, 49 (1988); *Johnson v. Phillips,* 664 F.3d 232, 239–40 (8th Cir. 2011). It is true that Plaintiff and Love met in the context of the NU women's basketball program. Beyond that, Love's employment with NU was unrelated to sexual contact between Plaintiff and Love.

This Court has already found that Plaintiff's complaint did "not allege, nor does it credibly suggest that Love had authority over or participated in the decision to suspend or remove Plaintiff from the team….Absent factual allegations that Love made, directed, influence, or knowingly participated in the challenged decision, Plaintiff cannot establish the personal involvement required to state a claim under § 1983." (Filing #132, p. 17) Plaintiff's complaint couldn't make such a representation – because there is no basis in fact for it.

Besides a failure to prove § 1983 liability, Plaintiff cannot prove she suffered damages proximately caused by Love. Plaintiff provided nothing in response to Love's discovery inquiry for her special damages from the alleged violation of her rights. (SUMF ¶ 295) She designated no expert witness to testify regarding mental health diagnoses or causally linking them (if such exist) to the events alleged in her complaint against Love. (SUMF ¶ 343) Plaintiff lost nothing in NIL damages: she actually earned more than 25 times the amount of NIL fees at UNLV compared to her NIL earnings at NU. (SUMF ¶ 340-342) She did not know what she would have earned had she stayed on the Husker women's basketball team and she designated

no witness to testify to that or for lost employment income or other economic damages. *Id.*

Plaintiff's assertion that her reputation and presumptively her ability to work in her aspirational field as a basketball coach, is belied by the record. Since graduating from UNLV, Plaintiff has worked as a personal trainer at local gym in Oregon where her family lives, and she has a self-created social media "influencer" account on TikTok. Plaintiff has not ever applied for employment as a coach at any level of athletics, nor is there evidence she volunteers anywhere in that capacity. (SUMF ¶ 333-334)

Love made no public statement regarding his sexual contact with Plaintiff. Love gave no statement admitting sexual contact with Plaintiff until Love's deposition on February 5, 2026. Plaintiff had already publicized it in lurid, mostly false description in her complaint on February 18, 2024 (Filing #1). Then, Plaintiff's attorney broadcast Love's deposition confirmation in a public court filing on March 17, 2026. (Filing #147,, par. 9) See also https://www.espn.com/womens-college-basketball/story/_/id/48622144/ex-nebraska-assistant-admitted-having-sex-player. Love said nothing, so he cannot be held liable for "stigma" Plaintiff allegedly sustained because of their sexual relationship. *Board of Curators of University of Missouri v. Horowitz*, 435 U.S. 78, 89-90 (1978) (without public disclosure, no liability); accord *Parker v. City of Vandalia, Missouri,* 2021 WL 1080681, at *18 (E.D. Mo. 2021).

If anyone or anything harmed Plaintiff's reputation, it was Plaintiff herself. Beyond her own mere allegation, Plaintiff has no evidence of actual reputational harm. That, without more, is insufficient to invoke the protection of the due process clause. Loss of reputation, if proved, must be coupled with other tangible elements to rise to the level of a protected property interest. Sometimes this is referred to as the "stigma plus" test." *Gunderson v. Hvass,* 339 F.3d 639, 642 (8th Cir. 2003). In discovery Plaintiff produced evidence of no special damages she allegedly suffered as a result of Love's acts. (SUMF ¶ 295) Certainly Plaintiff lost no constitutionally protected status or rights: the Eighth Circuit Court of Appeals and the U.S. Supreme Court do not recognize a constitutionally protected interest in a student athlete's continued participation in intercollegiate athletics. *Does 1-2 v. Regents of the Univ. of Minnesota*, 999 F.3d 571 (8th Cir. 2021). Her conjectural future NIL economic opportunities are also not constitutionally protected rights. *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972).

Love is entitled to summary judgment based on qualified immunity and Plaintiff's inability to adduce facts and supporting evidence to prove she did not consent to sexual contact with Love. There was no violation of clearly established constitutional law in the consensual sexual contact between Plaintiff and Love. This case may fairly be characterized as "the murder of a beautiful theory by a brutal gang of facts." *State v. Kofoed,* 283 Neb. 767, 800, 817 N.W.2d 225, 249 (2012) (quotation frequently ascribed to 17th-century French author François Duc de La

Rochefoucauld). As a matter of law, Love is entitled to judgment in his favor on Plaintiff's § 1983 claim, and. Plaintiff's claim against Love should be dismissed.

**B. Love is entitled to Rule 12(b)(6) dismissal or Rule 56 summary judgment on Plaintiff's claim under Title IX, 20 U.S.C. § 1681 *et seq.***

On this claim, Plaintiff alleges:

> ¶ 85. "NU's failure to protect Ashley as described above was so severe, pervasive, and objectively offensive that it deprived Ashley of access to educational opportunities and/or benefits provided by the school.
>
> ¶86 : NU created and/or subjected Ashley to a hostile educational environment in violation to Title IX, because:
>
> a. Ashley was member of protected class;
> b. Ashley was subjected to sexual harassment by an employee, Love;
> c. NU failed to implement policies
> d. NU punished Ashley for the sexual harassment of its employee and her coach, Love."
>
> ¶ 87. "NU and its officials also had knowledge that sexual relationships between coaches and student-athletes are always improper and harmful to the student-athlete. By no later than February 17, 2022, NU and its officials had actual knowledge of LOVE's pursuit of a sexual relationship with ASHLEY. NU also had knowledge of the resulting harm when it allowed Williams to punish Ashley for Love's abuse of power".

. . .

> ¶ 93. "Ashley has suffered and will continue to suffer damage. She has lost educational benefits and other benefits of being a starter on the Cornhusker women's basketball team, as a direct and proximate result of NU's deliberate indifference to her rights under Title IX."

(Filing #1)

In this cause of action Plaintiff's complaint does not specify which Defendant she seeks to hold liable. Is it just BRUN? Also Love? Other unnamed "officials"? "[A]mbiguous allegations which collectively attribute misconduct to every named and unnamed defendant are insufficient to give the individual defendants "fair notice of what the [ ] claim is and the grounds upon which it rests." *Leber v. Bryan Medical Center.,* No. 8:25CV401, 2026 WL 1283266, at *3 (D. Neb. May 11, 2026). This kind of "shotgun pleading" wastes the resources of court and counsel, who must sift each allegation to determine what actually pertains to the cause of action and against whom it's asserted. *Id.*

Title IX conditions federal funding on the recipient educational institution's duty not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds. *Gebser v. Lago Vista Independent School District,* 524 U.S. 274 (1998). "The fact that title IX was enacted pursuant to Congress's spending power is evidence that it prohibits discriminatory acts only by grant recipients." *Rowinsky v. Bryan Independent School Dist.,* 80 F.3d 1006, 1012 (5th Cir.), *cert. denied,* 519 U.S. 861 (1996).

Love is an individual, nor an educational institution grand recipient. Since Title IX applies to institutions and programs, it has consistently been interpreted as not authorizing suit against individual educational institution employees. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009); *Kinman v. Omaha Pub. Sch. Dist.*, 171 F.3d 607, 611 (8th Cir. 1999) (joining those circuits holding that "school officials may not be sued in their individual capacity under Title IX" because they do not receive federal funds) *Ng v. Bd. of Regents of Univ. of Minnesota,* 2022 WL 602224, at *7 (D. Minn. Mar. 1, 2022), *aff'd* 64 F.4th 992 (8th Cir. 2023); *Cox v. Sugg,* 484 F.3d 1062 (8th Cir. 2007).

Love was not a policy-maker or an action-taker in any way that creates individual liability under Title IX or § 1983. He had no disciplinary authority, control or input over Plaintiff's status on the NU basketball team, or at NU generally. The Court has already found that "Plaintiff does not allege, nor does her complaint credibly suggest, that Love had authority over or participated in the decision to suspend or remove Plaintiff from the team." (Findings and Recommendation and Order, Filing #132, p. 17) Plaintiff's only conceivable theory is general damages, but "damages for emotional distress are not recoverable in suits brought under Title IX." *Abdulsalam v. Bd. of Regents of Univ. of Nebraska,* 2023 WL 4266378, at *4 (D. Neb. 2023) (Buescher, J.)

Love is entitled to judgment in his favor as a matter of law against Plaintiff' because federal law does not recognize damages claims against an individual like

Love under Title IX. *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). As it pertains to Love Plaintiff's complaint should be dismissed.

## V. CONCLUSION

Love' motion for summary judgment should be sustained in all respects, and Plaintiff's Complaint against Love should be dismissed with prejudice.

DATED this 31st day of July, 2026.

CHUCK LOVE, JR., Defendant

BY: */s/Denise E. Frost*
Denise E. Frost, #18794
JOHNSON & MOCK, PC LLO
9900 Nicholas Street, # 225
Omaha, NE 68114-2249
(402) 346-8856
dfrost@johnsonandmock.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Nebraska Civil Rule 7.1(d)(1)(D), I certify that according to the word count function of Microsoft Word, the word-processing software used in creation of this brief, this document contains 6,789 words, including the case caption, signature block, certificates of service and compliance, as required by NECivR 7.1(d)(1)(A). I further certify that no portion of this brief was drafted using generative artificial intelligence and, should generative artificial intelligence have been used in any way, I reviewed and verified the accuracy of such content, including all citations and legal authorities, in accordance with NECivR 7.1(d)(2).

*/s/ Denise E. Frost*

**CERTIFICATE OF SERVICE**

I certify that on July 31, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of the filing to the following counsel of record:

Maren Lynn Chaloupka
mlc@chaloupkalaw.et

Nathan T. Bruner
nbruner@nebraskalawfirm.net

Bren H. Chambers
bchambers@nebaska.edu

Susan K. Sapp
ssapp@clinewilliams.com

Lily Amare
lamare@clinewilliams.com

*/s/Denise E. Frost*